983 F.2d 1185
 37 Fed. R. Evid. Serv. 1247
 UNITED STATES of America, Appellee,
v.
John DeVILLIO, Joseph DeFigueroa, Salvatore Fusco, Frank
Smith, Michael Bloome, Thomas Roberto, Richard Santiago,
Angel Soto, Anthony Vega, Anthony Zappola, George Zappola,
Vincent Zappola, Dominick Costa, Defendants,
Philip DeAngelo and Peter Spoto, Defendants-Appellants.
 Nos. 246, 503, Dockets 92-1141, 92-1155.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 14, 1992.
Decided Jan. 21, 1993.
 
 1
 Joel Cohen, New York City, for defendant-appellant Peter Spoto.
 
 
 2
 Martin Geduldig, Hicksville, NY, for defendant-appellant Philip DeAngelo.
 
 
 3
 Eric Corngold, Asst. U.S. Atty., E.D.N.Y. (Jack Wenik and Michael Considine, Asst. U.S. Attys., and Andrew J. Maloney, U.S. Atty., E.D.N.Y., of counsel), for appellee.
 
 
 4
 Before ALTIMARI and McLAUGHLIN, Circuit Judges, and SPATT, District Judge.*
 
 SPATT, District Judge:
 
 5
 In this chronicle of RICO co-conspirators, F.B.I. informants, secret tape recordings, stolen cargo and bungled burglaries, two of the defendants emerge to challenge their convictions on the basis of the purportedly prejudicial linkage between themselves and their co-defendants. The case presents some interesting evidentiary questions for the Court's consideration, including Massiah and Bruton issues as well as the application of Fed.R.Evid. 404(b).
 
 
 6
 Appellants Philip DeAngelo and Peter Spoto were found guilty after a jury trial on three counts of a 14-count superseding indictment, namely, transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312 (1988); transporting stolen goods in interstate commerce, in violation of 18 U.S.C. § 2314 (1988 & Supp. III 1991); and stealing goods from an interstate shipment, in violation of 18 U.S.C. § 659 (1988).
 
 
 7
 DeAngelo and Spoto bring this appeal jointly, claiming that the District Court erred in: (1) refusing to admit the tape recorded statement of an unavailable witness which allegedly exculpated the appellants; (2) failing to suppress certain tape recordings made by a co-defendant on behalf of the Government after the appellants' right to counsel had attached; (3) denying their motion for severance from the defendants charged with RICO conspiracy; (4) admitting testimony in violation of the Bruton rule; (5) admitting "similar act" evidence. We affirm.
 
 BACKGROUND
 
 8
 Philip DeAngelo and Peter Spoto were convicted on October 23, 1991, after a jury trial in the United States District Court for the Eastern District of New York (I. Leo Glasser, Judge ). All of the charges in the indictment, with the exception of one involving the attempted murder of Dominick Costa, a government informant, arose from a series of commercial burglaries committed in and around New York City between July, 1985 and July, 1988. Five of the defendants, including appellants DeAngelo and Spoto, as well as Michael Bloome, Salvatore Fusco and Vincent Zappola went to trial.
 
 
 9
 All of the remaining defendants pleaded guilty to various felony charges, with the exception of George Zappola who remains a fugitive. DeAngelo and Spoto's co-defendants were charged with RICO conspiracy and ten predicate acts, including the one count of attempted murder of Dominick Costa. Richard Santiago and Angel Soto--not to be confused with appellant Peter Spoto--both pleaded guilty and testified as witnesses for the Government at trial.
 
 
 10
 Apart from appellants DeAngelo and Spoto, the co-defendants were charged with racketeering, racketeering conspiracy, and six other burglaries or attempted burglaries of commercial premises, including banks, jewelry shops and department stores. Fusco and Bloome were also charged with the attempted murder of Dominick Costa. The charges against appellants DeAngelo and Spoto were based solely on the burglary of a Bulova Watch Company warehouse over the 1986 Thanksgiving Weekend. Because DeAngelo and Spoto were charged only with the Bulova Watch Company burglary, their counsel moved for a severance of those counts and that motion was denied by Judge Glasser. Bloome, Fusco and Vincent Zappola were convicted of all charges while appellants DeAngelo and Spoto were convicted of the three counts lodged against them in the indictment.
 
 
 11
 The case against appellants DeAngelo and Spoto was presented primarily through the testimony of two cooperating witnesses, Angel Soto and Ricky Santiago--co-defendants who pleaded guilty and agreed to testify for the Government. Soto and Santiago were part of the John Otto Heidel organization. Heidel was a professional burglar and long-time informant for the F.B.I. Soto and Santiago had committed other burglaries with Heidel both before and after the Bulova burglary. Soto was permitted to testify over objection that Tommy Roberto, another pleading co-defendant, told him that appellants DeAngelo and Spoto were two of the best "safecrackers" in the business.
 
 
 12
 Evidence obtained from two co-conspirators, Heidel and Frank Spatafora, linked appellants DeAngelo and Spoto to other burglaries that were tied to racketeering defendant Vincent Zappola. Heidel was named by Spatafora as an accomplice in the previous Atlantic Liberty Savings Bank burglary which took place over the Martin Luther King holiday weekend in January, 1987. As part of his cooperation agreement, Spatafora recorded a number of conversations, most of which took place with Heidel and a few with appellant Spoto. In the Heidel conversations, Spatafora discussed the Atlantic Liberty Savings Bank burglary and the participation of other co-defendants in the Bulova burglary. In addition, Heidel talked about the possibility of burglarizing the Harkels Jewelry Manufacturing Company ("Harkels") and suggested using appellants Spoto and DeAngelo, two of his "safecrackers." At a planning meeting, appellant Spoto was heard on tape assuring Spatafora that he was a "professional safecracker."
 
 
 13
 Under F.B.I. supervision, Spatafora planned the burglary of Harkels with Heidel and appellant Spoto. Spatafora informed the F.B.I. of the intended break-in set for August 16, 1987, and DeAngelo and Spoto were apprehended while attempting to hide inside the building.
 
 
 14
 Shortly after being arrested for the Harkels burglary, Heidel agreed to cooperate with the F.B.I. and he, too, recorded a series of conversations. On these tapes, Heidel encouraged appellants Spoto and DeAngelo and co-defendants Vincent Zappola and Tommy Roberto to discuss past burglaries, including details of the Bulova, Atlantic Liberty and Harkels burglaries. Heidel was murdered on October 8, 1987, prior to the trial. The appellants objected to the Government's attempt to introduce Heidel's recordings at trial, alleging a Massiah violation. At the time the recordings were made, appellants Spoto and DeAngelo had been arraigned on the Harkels burglary and were represented by counsel. Nevertheless, Judge Glasser admitted the tapes into evidence. The appellants also objected when Judge Glasser refused to admit into evidence another section of one of the same tapes, in which Heidel made statements purportedly exculpating DeAngelo and Spoto, on the ground that the appellants had not demonstrated that the particular section of the tape was "trustworthy."
 
 
 15
 Heidel, DeAngelo and Spoto were initially arrested on a federal complaint in the Harkels burglary, but the charge was later dismissed. Appellants DeAngelo and Spoto were subsequently indicted in state court for the Harkels burglary, pleaded guilty to one count of felony burglary, and were sentenced to five years probation.
 
 
 16
 The Spatafora and Heidel tapes corroborated the accounts of the Bulova burglary provided by the testimony of cooperating defendants Soto and Santiago. In addition, the Government introduced into evidence an array of burglar's tools, including cutting torches, drills, walkie talkies, police scanners, and lists of government radio frequencies--all of which were seized from appellant Spoto's home at the time of his arrest on November 14, 1990. The appellants objected to the introduction of this evidence as well as other "similar act" evidence.
 
 DISCUSSION
 
 17
 A. Exclusion of the Alleged Exculpatory Statement
 
 
 18
 The appellants assert that the District Court erred in concluding that the tape recorded statement of an unavailable witness, purportedly exculpating the appellants, was inadmissible in the defense case where the court had already determined that the same tapes were reliable in the Government's case-in-chief. Appellant Spoto argues that the District Court improperly excluded a portion of the September 2, 1987 taped conversation between John Otto Heidel and co-defendant Tommy Roberto in which Heidel stated "I'm the only watch guy they took."
 
 
 19
 Both Spoto and DeAngelo had been arrested at the scene of the Harkels burglary. The September 2, 1987 taped conversation included statements concerning both the Harkels burglary and the prior Bulova burglary. Based on Heidel's comment that he was "the only watch guy they took," Spoto attempted to offer that portion of the tape as proof that Heidel was the only person involved in both the Bulova and Harkels burglaries. Appellant Spoto contends that Heidel's statement exculpated him and DeAngelo from any connection with the Bulova burglary. Counsel reasoned to Judge Glasser that this hearsay statement should have been admitted under Fed.R.Evid. 804(b)(3) as a declaration against Heidel's penal interest or under Fed.R.Evid. 804(b)(5), the residual hearsay exception.
 
 
 20
 The appellants point out that the District Court had previously admitted this series of tapes when offered by the Government, finding them to be sufficiently reliable under Fed.R.Evid. 804(b)(3) as containing statements against penal interest made by Heidel. The appellants argued that other portions of the tapes should be admitted to complete the story and to enhance the jury's understanding of circumstances in which those statements were made. When the appellants attempted to admit the "only watch guy" statement of Heidel as a statement against penal interest, the court ruled the statement inadmissible because its reliability was not sufficiently corroborated.
 
 
 21
 The portion of Fed.R.Evid. 804(b)(3) which encompasses statements made against the declarant's penal interest concludes as follows:
 
 
 22
 A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 
 
 23
 The District Court refused to admit the statement on the basis that it was not corroborated. The appellants maintain that the District Court "missed the rationale behind the corroboration rule." Essentially, the appellants claim that corroboration was not necessary in this case because the statement was not made by the defendants' witness, but rather by the Government's own informant, on tapes which the Government made, and which the court had already ruled were sufficiently reliable to be admitted in their entirety. The appellants conclude that the "government and the court were thus estopped from asserting that the tapes were unreliable."
 
 
 24
 Appellate review of this issue is limited to an "abuse of discretion" standard. See United States v. Bahadar, 954 F.2d 821, 827 (2d Cir.1992) (citing United States v. Salvador, 820 F.2d 558, 561 (2d Cir.), cert. denied, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 398 (1987)). It is self-evident that Heidel's murder rendered him an "unavailable" witness. Essentially, Rule 804(b)(3), the "declaration against penal interest" exception to the hearsay rule, requires that to be admissible, the statement must have been, at the time it was made, "so far contrary to the declarant's best interests that a reasonable person would not make the statement unless the declarant believed it to be true." Bahadar, 954 F.2d at 828. Once that determination is made, the inquiry ends, unless the statement would simultaneously expose the declarant to criminal liability and exculpate the accused. In that case, the last sentence of 804(b)(3) applies, requiring corroborating circumstances to "clearly indicate the trustworthiness of the statement."
 
 
 25
 The appellants claim that it was error for the District Court to rely entirely on Salvador, 820 F.2d at 561 in excluding the Heidel statement based upon the Fed.R.Evid. 804(b)(3) test for corroboration of trustworthiness. In Salvador, this Court held that it is the defendants' burden to "justify admission of the exculpatory statement by showing 'corroborating circumstances' that indicate 'the trustworthiness' of the statement." Salvador, 820 F.2d at 561. That burden is " 'not an insignificant hurdle,' " id. quoting United States v. Barrett, 539 F.2d 244, 253 (1st Cir.1976), and the "inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable." Salvador, 820 F.2d at 561.
 
 
 26
 Instead, the appellants argue that the District Court should have considered the three-part test for evaluating trustworthiness as set forth in Chambers v. Mississippi, 410 U.S. 284, 300-301, 93 S.Ct. 1038, 1048-49, 35 L.Ed.2d 297 (1973): (1) the statement at issue was made spontaneously to a close acquaintance shortly after the crime was committed; (2) it was corroborated by some other evidence in the case, such as the testimony of an eyewitness; and (3) it was self-incriminating and unquestionably against the declarant's penal interest.
 
 
 27
 Applying the rule in Chambers, we find that the appellants failed to establish these requisite elements of trustworthiness. Heidel's statement which was part of the September 2, 1987 taped conversation was not made "shortly after" the Bulova burglary which occurred during the 1986 Thanksgiving weekend. In addition, there was no eyewitness corroboration that Heidel was in fact the only person at the scene of the Bulova burglary. Nor was Heidel's statement against his penal interest at the time it was made.
 
 
 28
 As the Government points out, Heidel did not make the statement "spontaneously" because at the time the tape was made, he was cooperating with the Government and wearing a wire during a continuing investigation. This factor distinguishes the tapes which Judge Glasser earlier admitted--those which had been made in April, 1987, before Heidel undertook his cooperation with the Government. In addition, the exculpatory statement was not corroborated by other evidence in the case. On the contrary, in the recording of a September 2, 1987 conversation among Heidel, Spoto and DeAngelo, all three discussed their involvement in the Bulova burglary. At that time, Heidel's statement was also not "against his penal interest" because he was recording the conversations under the F.B.I.'s supervision and his statements did not "subject him to criminal liability." Thus, Judge Glasser properly declined to admit this portion of the tape.
 
 
 29
 Similarly, the argument based on the residual hearsay exception, Rule 804(b)(5), is also without merit. The residual hearsay exceptions, 803(24) and 804(b)(5), are applied in the rarest of cases, and the denial of admission under the exceptions can only be reversed for an abuse of discretion. See United States v. Cardascia, 951 F.2d 474, 489 (2d Cir.1991); United States v. Torres, 901 F.2d 205, 238-39 (2d Cir.), cert. denied sub nom. Cruz v. United States, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); United States v. Beltempo, 675 F.2d 472, 480 (2d Cir.), cert. denied, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982); United States v. Rodriguez, 706 F.2d 31, 41 (2d Cir.1983).
 
 
 30
 B. Did the Heidel Tape Violate the MASSIAH Rule?
 
 
 31
 Asserting a violation under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the appellants argue that the trial court erred in failing to suppress certain tape recordings made by their co-defendant on behalf of the Government after their right to counsel had attached. In Massiah, the Supreme Court stated that "[a]ny secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." Id. at 205, 84 S.Ct. at 1202 (quoting People v. Waterman, 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961)).
 
 
 32
 Relying on this language, appellants Spoto and DeAngelo note that they had been arraigned on the Harkels burglary and were represented by counsel at the time the Government arranged for Heidel to wear a body recorder to tape several conversations. Five tapes were admitted into evidence, portions of which included discussions of both the Harkels and Bulova burglaries. DeAngelo and Spoto participated in one of those conversations which was recorded on September 2, 1987. There is no doubt that the right to counsel had attached with respect to the Harkels burglary. However, DeAngelo and Spoto were not yet charged with the Bulova burglary at that time, and the Government maintains that their Sixth Amendment right to counsel had not attached.
 
 
 33
 The appellants argue that the Massiah line of cases requires that evidence obtained in violation of a defendant's right to counsel not be used to place that defendant in jeopardy. Relying principally on Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) and United States v. Hammad, 858 F.2d 834 (2d Cir.1988), cert. denied, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990), the appellants contend that the tape of the September 2, 1987 conversation should have been suppressed and that the Government's action in sending Heidel to tape the conversations was a violation of both Massiah and Disciplinary Rule 7-104(A)(1).
 
 
 34
 In Moulton, the Supreme Judicial Court of Maine remanded the case for a new trial after finding that the trial court had improperly admitted incriminating statements made by a defendant, after formal charges had been filed against him, to a codefendant who was operating as an undercover agent for the State while taping the conversations. Maine v. Moulton, 481 A.2d 155, 161 (Me.1984). The court noted that notwithstanding the police department's legitimate purpose in investigating the defendant's alleged plan to kill a State witness, the incriminating statements were not admissible. Id.
 
 
 35
 In affirming the state court, the United States Supreme Court held that although police have a legitimate interest in investigating crimes for which formal charges have been filed as well as new or additional crimes, their powers are limited by the Sixth Amendment rights of the accused. Maine v. Moulton, 474 U.S. at 179-180, 106 S.Ct. at 488-89. In balancing the state's interest with that of the individual defendant, the Court noted that excluding evidence related to charges for which the Sixth Amendment right to counsel had not attached, simply because other charges were pending, "would unnecessarily frustrate the public's interest in the investigation of criminal activities." Id. Although the Court held that the incriminating statements made by Moulton which pertained to pending charges were inadmissible at trial, the Court added in a footnote that "[i]ncriminating statements pertaining to other crimes as to which the Sixth Amendment has not yet attached, are, of course, admissible at trial of those offenses." Id. at 180 n. 16, 106 S.Ct. at 489 n. 16.
 
 
 36
 DeAngelo and Spoto were not charged with the Bulova burglary as a substantive crime. As such, we find that the trial court's admission into evidence of certain portions of the September 1, 1987 conversation concerning the Bulova burglary was appropriate and that no Massiah violation occurred. See McNeil v. Wisconsin, --- U.S. ----, ----, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991) (Sixth Amendment right to counsel is "offense-specific" and "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced"); Alexander v. State of Connecticut, 917 F.2d 747, 751 n. 1 (2d Cir.) (no Massiah violation in admitting into evidence conversation between friend who was visiting prisoner charged only with arson where inmate confided he had also committed murder and murder charges had not been filed) (citing Moulton, 474 U.S. at 180 n. 16, 106 S.Ct. at 489 n. 16, cert. granted, 496 U.S. 914, 110 S.Ct. 2607, 110 L.Ed.2d 628 (1990), cert. denied, --- U.S. ----, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991)).
 
 
 37
 Referring to the purported violation of Disciplinary Rule 7-104(A)(1), the appellants' reliance upon Hammad, 858 F.2d at 834, is also unavailing. This circuit conclusively established in United States v. Jamil, 707 F.2d 638, 645 (2d Cir.1983) that Disciplinary Rule 7-104(A)(1) does apply to criminal prosecutions. However, in Hammad, we looked at the closer question of the extent to which DR 7-104(A)(1) restricts the use of information by prosecutors during the investigatory stages of a case--prior to indictment, but after a suspect has retained counsel in connection with the subject matter of a criminal investigation.
 
 
 38
 "Under DR 7-104(A)(1), a prosecutor is 'authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations, and the use of informants to gather evidence against a suspect will frequently fall within the ambit of such authorization." United States v. Hammad, 858 F.2d at 839. Notwithstanding this finding, we recognized the potential for prosecutors to overstep the broad powers of their office and in doing so, violate the ethical precepts of DR 7-104(A)(1).
 
 
 39
 In Hammad, we made reference to United States v. Sam Goody, Inc., 518 F.Supp. 1223, 1224-25 n. 3 (E.D.N.Y.1981), appeal dismissed, 675 F.2d 17 (2d Cir.1982), in which the district court found it unethical for the government to "wire" an informant and send him to elicit incriminating statements after the defendant's attorney had advised the prosecutor to deal only with counsel. Similarly, in Hammad, we found that the prosecutor issued a subpoena for the informant, not to secure his attendance before the grand jury, but to create a pretense that might help the informant elicit admissions from a represented suspect. Hammad, 858 F.2d at 840. For the first time, we held that suppression may be ordered, in the district court's discretion, based upon a DR 7-104(A)(1) violation. However, in the instant case, there is no evidence of any violation rising to the level of the one we considered in Hammad. Therefore, the appellants can take no solace from Hammad or Sam Goody.
 
 C. The Severance Motion
 
 40
 The appellants argue that the District Court abused its discretion in denying their motion for severance based on the "spillover effect" from the charges lodged against their co-defendants, namely RICO conspiracy and acts of violence. The trial court has discretion to grant a defendant's request for severance under Rule 14 if it appears that the joinder with other defendants will result in undue prejudice. See United States v. Eisen, 1990 WL 164681 * 8 (E.D.N.Y.1990), aff'd, 974 F.2d 246 (2d Cir.1992); United States v. Benitez, 920 F.2d 1080, 1085 (2d Cir.1990).
 
 
 41
 However, a defendant must establish more than that he would "have a better chance of obtaining an acquittal at a separate trial." United States v. Friedman, 854 F.2d 535, 563 (2d Cir.1988) (citing United States v. DeSapio, 435 F.2d 272, 280 (2d Cir.1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971)), cert. denied, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). In fact, an appellant must show that a "miscarriage of justice" has occurred. United States v. Nersesian, 824 F.2d 1294, 1303 (2d Cir.1987), cert. denied sub nom. Abdouch v. United States, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380. The argument advanced by the appellants does not approach this standard, particularly in light of the overwhelming evidence of the appellants' guilt. See United States v. Nerlinger, 862 F.2d 967, 974 (2d Cir.1988).
 
 
 42
 In the instant case, the Government introduced testimony surrounding the attempted murder of Dominick Costa, a licensed locksmith involved in the burglary ring who subsequently cooperated with local law enforcement officials in August, 1988. The appellants contend that this information was inflammatory and prejudicial. However, Judge Glasser gave an explicit limiting instruction to the jurors that this testimony could not be used as evidence against either Spoto or DeAngelo. Therefore, the District Court did not abuse its discretion in refusing to sever the counts at issue.
 
 D. The Alleged BRUTON Violation
 
 43
 According to the appellants, the admission of the out-of-court statement of a non-testifying co-defendant, namely Tommy Roberto, through the testimony of Angel Soto, violated their sixth amendment right to confrontation. Roberto allegedly told Soto that he and appellants DeAngelo and Spoto took the Bulova watches to Pennsylvania to fence them. Spoto and DeAngelo argue that this statement was the only evidence supplying the "interstate" element of the charges lodged against them. Roberto pleaded guilty and chose not to testify or cooperate with the Government. In addition, again over counsel's objection, Soto was permitted to testify that Roberto introduced appellants Spoto and DeAngelo to him as two of the best "safecrackers" in the business.
 
 
 44
 The Government maintains that there was no violation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) because Roberto's statements were classic co-conspirator statements, admissible under Fed.R.Evid. 801(d)(2)(E). A review of the superseding indictment reveals that the appellants were not charged as members of the "By-Pass Gang," nor with any of the conspiracy, racketeering or RICO counts. In addition, none of counts 4, 5 or 6 alleges any acts "in furtherance of" a conspiracy.
 
 
 45
 However, this Court, in addition to others, has previously determined that "it is not necessary that the Government charge a conspiracy to take advantage of Fed.R.Evid. 801(d)(2)(E)" and that co-conspirator statements can be used against a defendant even though he was not charged with being a member of the conspiracy. See United States v. Stratton, 779 F.2d 820, 829 (2d Cir.1985), cert. denied, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); United States v. Munson, 819 F.2d 337, 343 (1st Cir.1987). It is now well established that the "applicability of the co-conspirator exception to the hearsay rule is not conditioned on the presence of a conspiracy count in the indictment." Munson, 819 F.2d at 343, quoting Ottomano v. United States, 468 F.2d 269, 273 (1st Cir.1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); see also, United States v. Maldonado-Rivera, 922 F.2d 934, 962 (2d Cir.1990), cert. denied sub nom. Ramirez-Talavera v. United States, --- U.S. ----, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); United States v. Stratton, 779 F.2d at 829.
 
 
 46
 In Maldonado-Rivera, we held that although Fed.R.Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment. Id. at 962.
 
 
 47
 The evidence adduced at the trial clearly established the existence of a commercial burglary ring operating in and around New York City between July, 1985 and July, 1988. There was substantial proof, including non-hearsay evidence of the testifying co-defendants, that a conspiracy existed among those involved in the Harkels and Bulova burglaries. In addition, in his own recorded conversations, Spoto admitted that he was a professional safecracker and he provided details of the interstate transportation of the watches. Roberto's comments to Soto about fencing the watches disclosed that appellant Spoto was a fellow conspirator. In addition, the statements concerning the distribution of the proceeds satisfied the "in furtherance" requirement of Fed.R.Evid. 801(d)(2)(E). United States v. Rastelli, 870 F.2d 822, 837 (2d Cir.), cert. denied sub nom. Agar v. United States, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989).
 
 
 48
 Under the standard enunciated in Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the statements at issue fall within the purview of Rule 801(d)(2)(E) and were admissible as statements made "in furtherance of" the conspiracy, even though the appellants were not charged in the indictment with being members of the conspiracy. We therefore find no Bruton violation.
 
 E. Similar Act Evidence
 
 49
 The appellants claim that the District Court erred in permitting the Government to introduce the Costa shooting as evidence of other crimes or bad acts. In light of the fact that Spoto and DeAngelo were not accused of this crime and the District Court instructed the jury that this evidence was not admissible against them, we find no merit in this argument.
 
 
 50
 Counsel also argues that evidence concerning the Harkels burglary was introduced solely to establish the appellants' propensity to commit crimes. In discussing this circuit's "inclusion approach," we noted that evidence of prior crimes or bad acts is admissible for any purpose other than to demonstrate propensity, so long as it is relevant and the court "satisfies the probative-prejudice balancing test of Fed.R.Evid. 403." United States v. Brennan, 798 F.2d 581, 589 (2d Cir.1986), cert. denied, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989). As we noted in Brennan, a trial judge has broad discretion to admit "other crimes" evidence, which ruling will not be overturned on appeal absent an abuse of discretion. Id. (citing United States v. Harris, 733 F.2d 994, 1006-07 (2d Cir.1984)).
 
 
 51
 "Other crimes" evidence may also be admitted to complete the story of the crimes charged. In weighing the probative value as against the prejudicial effect of the testimony concerning the Harkels burglary, Judge Glasser found that the evidence provided background for the crimes charged and explained how witnesses Soto and Santiago came to know appellants Spoto and DeAngelo. Judge Glasser also gave the jury a clear limiting instruction on the use of such evidence. Therefore, we find no abuse of discretion in the admission of co-defendant Soto's testimony concerning the group's prior burglary activity in the Brooklyn area.
 
 
 52
 However, we reach a different conclusion concerning the admission of certain physical evidence consisting of a large number of burglars' tools taken from appellant Spoto's home after the indictment. Initially, we note that the appellants were not charged with burglary or any of the RICO counts. As a general rule, similar act evidence on the issues of identity and a common design or plan is admissible even if the acts occurred after the crime charged in the indictment. See United States v. Arroyo-Angulo, 580 F.2d 1137, 1149 (2d Cir.), cert. denied, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978); United States v. Myers, 550 F.2d 1036, 1044 n. 10 (5th Cir.1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). The appellants argue that the evidence at issue is not the kind contemplated by Arroyo-Angulo. We agree.
 
 
 53
 The appellants assert that the array of burglars' tools and equipment obtained after the indictment, as the result of a "protective sweep" of Spoto's residence incident to his arrest, was introduced merely to establish propensity and should have been precluded under Fed.R.Evid. 404(b). "It is well-established in this circuit that evidence of subsequent similar acts, including other crimes, is admissible in the discretion of the trial court 'if it is substantially relevant for a purpose other than merely to show a defendant's criminal character or disposition.' " United States v. Cavallaro, 553 F.2d 300, 305 (2d Cir.1977) (quoting United States v. Deaton, 381 F.2d 114, 117 (2d Cir.1967)).
 
 
 54
 The discovery of the burglars' tools at Spoto's residence did not lead to additional charges against Spoto or DeAngelo. Nor were the burglars' tools obtained during the performance of subsequent "acts" by the appellants. Although such a persuasive visual display undoubtedly supported the Government's evidence in relation to the conviction of the other defendants in this case, it was not evidence of the appellants' modus operandi as the Government maintains.
 
 
 55
 The burglars' tools did not establish motive, intent or opportunity to unlawfully transport a stolen vehicle or stolen goods which are the crimes charged against appellants Spoto and DeAngelo. Nor did the tools substantiate a particular modus operandi of these two defendants. See, e.g., Myers, 550 F.2d at 1045 (probity of evidence of modus operandi depends upon degree of similarity between the charged crime and uncharged crime). Rather, the array of tools demonstrated that the appellants were, in fact, professional burglars, despite the fact that they were not charged with the predicate acts in the indictment. In light of these factors, the burglars' tools should not have been admitted.
 
 
 56
 Despite the erroneous admission of this evidence, we affirm the appellants' convictions. United States v. LaSanta, 978 F.2d 1300, 1306 (2d Cir.1992). In our view, this error was harmless given the overwhelming evidence of guilt of both Spoto and DeAngelo, and the minimal prejudice which the array might have caused. United States v. Smith, 727 F.2d 214, 221-222 (2d Cir.1984) (admission of extrinsic evidence of defendant's alleged misappropriation of stock in connection with unrelated private placement was error, but error was harmless); United States v. Lyles, 593 F.2d 182, 196 (2d Cir.), cert. denied, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (error harmless given the overwhelming evidence of guilt).
 
 CONCLUSION
 
 57
 We have examined each of the appellants' remaining contentions and find them to be without merit. Accordingly, the judgment of the District Court is affirmed.
 
 
 
 *
 Judge Arthur D. Spatt, United States District Judge for the Eastern District of New York, sitting by designation