**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Fidel R. TUTIVEN, Defendant, Appellant.**

**No. 94–1209.**

United States Court of Appeals,
First Circuit.

Argued Aug. 1, 1994.

Decided Nov. 14, 1994.

**2**

Peter B. Krupp, Boston, MA, for appellant.

Timothy Q. Feeley, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Defendant Fidel R. Tutiven alleges error in various trial court rulings, and appeals from the district court judgment entered following his conviction and sentence on fourteen felony charges. As our review discloses no error, we affirm the district court judgment.

## I

### BACKGROUND [1]

During the relevant eleven-month period—between April 1992 and February 1993—while employed as a waiter at a Marriott Hotel, Tutiven conducted a part-time criminal enterprise selling stolen motor vehicles to a Massachusetts automobile dealership at bargain prices ranging from $7,900 for a 1991 Toyota Corolla to $21,500 for a 1991 Mercedes Benz. Tutiven represented to the buyer, Clair Motors, that the first car, a 1991 Nissan 240 SX, belonged to a cousin, and that subsequent vehicles had been obtained from unidentified dealers in the New York–New Jersey area who specialized in late-model cars purchased from financially distressed owners who responded to newspaper ads.

Tutiven presented Clair Motors with what appeared to be valid title certificates correctly describing the vehicles and bearing the same vehicle identification numbers ("VINs") appearing on the vehicles Tutiven delivered to Clair Motors.[2] It was stipulated that the fourteen vehicles identified in the indictment had been stolen before Tutiven came into possession.

Tutiven's defense was that he had been duped by an expert VIN-switching scheme and did not know the vehicles had been stolen. At trial the defense emphasized that

1. The facts are recited in the light most favorable to the verdicts. *United States v. Tejeda*, 974 F.2d 210, 212 (1st Cir.1992).

2. The VIN is a unique series of seventeen numbers and letters which the manufacturer must assign to each vehicle it assembles. The VIN provides an alphanumeric description of the particular vehicle to which it has been assigned. Normally it is affixed at three locations: on a narrow metal plate on top of the dashboard, near the base of the windshield (the public VIN); on

the federal certification sticker or decal placed on the driver's side doorjamb (the federal certification VIN); and on a metal surface inside the vehicle, usually within the engine compartment (the confidential VIN). All vehicles bear the public VIN and the federal certification VIN; ninety-five percent bear a confidential VIN. The confidential VIN, which is stamped into the metal of the vehicle, is the most difficult to locate and alter. No two vehicles bear the same valid VIN.

the apparent comportment among VINs, vehicles and title certificates had been adequate to allay any suspicions on the part of Clair Motors. Indeed, an automobile-theft expert testified that although the vehicles Tutiven sold to Clair Motors did not bear the VINs originally assigned by their manufacturers, it had taken a sophisticated heat and chemical restoration process to remove the false confidential VINs which had been superimposed on the originals. The disclosure of the original VINs enabled the authorities to determine that all fourteen vehicles had been stolen. Further investigation established that "switches" had been performed on all the vehicles, sometime before their sale to Clair Motors.[3]

Tutiven was arrested shortly after law enforcement authorities learned that all fourteen vehicles he sold to Clair Motors had been stolen. Within hours of the arrest, the police executed a search warrant at Tutiven's residence which disclosed a large cardboard box containing *only* implements and materials suitable for obliterating, altering, and replacing VINs, together with a small collection of Massachusetts, New Jersey and New York license plates.[4]

A federal grand jury returned a twenty-seven-count indictment on April 20, 1993, charging Tutiven with possessing or selling stolen motor vehicles which had crossed state lines, in violation of 18 U.S.C. § 2313, and with possessing, for sale, motor vehicles whose original VINs had been altered, in violation of 18 U.S.C. § 2321. The government later dismissed thirteen counts, leaving fourteen for trial: unlawful possession of thirteen separate stolen motor vehicles, in violation of 18 U.S.C. § 2313, and Count XIV, unlawful possession of a fourteenth vehicle bearing an altered VIN, in violation of 18 U.S.C. § 2321. The district court denied Tutiven's motion in limine to exclude the tools, materials and license plates.

For the most part, the evidence presented at trial established that the VIN alterations on the Tutiven vehicles were detectable only by experts, through a process of grinding, applying chemicals, and heating the metal surfaces on which the VINs were stamped. A VIN expert and a Massachusetts state trooper testified that the VIN alterations on the two vehicles involved in Counts I and XII were discernible by the trained eye, without resort to special processes. The testimony further established that letters in the VIN on the vehicle involved in Count XIV described a vehicle model different from the stolen vehicle to which it was attached, a virtual impossibility were the VIN valid. The jury returned guilty verdicts on all fourteen counts and the district court subsequently sentenced Tutiven to twenty-seven months' imprisonment.

Tutiven mounts three challenges on appeal. First, he claims that the district court committed reversible error by admitting in evidence the seized tools, materials and license plates, which invited the jury to draw only impermissible inferences. *See* Fed. R.Evid. 404(b). Second, Tutiven contends

---

3. Automobile dealerships routinely consult computer databases on stolen vehicles before purchasing a used vehicle. The predicate step in a "switch" scheme is to locate a "clean" vehicle, *i.e.,* one which has not been reported stolen but is nearly identical to the stolen vehicle in make, year, color, and style. The valid title certificate issued to the "clean" vehicle bears its true VIN. The VIN assigned to the "clean" vehicle is superimposed on the true VIN in the stolen vehicle. The stolen vehicle is then given title documents matching its "clean" look-alike.

An effective VIN-altering and title-switching scheme requires clean vehicles not in circulation. At least two types of clean vehicles meet this requirement: vehicles previously exported outside the United States and scrapped vehicles. When a stolen vehicle has been given the original VIN and valid papers describing an exported vehicle, the stolen car is said to be the subject of an "export switch;" a scrapped car results in a "salvage switch." The Tutiven vehicles involved export and salvage switches.

4. The only tools and materials discovered at Tutiven's residence were a pop rivet gun, pop rivets, an electric drill, black mesh body fiber, a sponge smothie, two tubes of silicone, and a can of scratch filler primer. Although the defense emphasized at trial that *each* tool had a licit purpose, there was no evidence that the tools and materials collectively were suited to any particular purpose other than altering VINs. Each tool seized had a VIN-altering function; none was unsuited to VIN altering. Finally, their common location with the license plates provided further support for the inference that the tools and materials were for use on motor vehicles.

that the jury instruction relating to the element of "knowledge" was deficient because the court refused to define "negligence." Third, he argues that a sentencing enhancement under U.S.S.G. § 2B1.1(b)(5)(B) (the so-called "in-the-business" enhancement) was improper, in that there was no evidence that Tutiven *knowingly* received stolen property.

## II

### *DISCUSSION*

#### A. *The Tools, Materials and License Plates*

Tutiven first claims that no relevant inference could be drawn from his possession of the tools, materials and license plates seized from his home except by indulging impermissible predicate inferences based on bad character and criminal propensity. *See* Fed. R.Evid. 404(b).[5] Alternatively, he contends

---

**5.** Fed.R.Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**6.** Fed.R.Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**7.** For example, the final jury charge included the following instruction:

> I just want to remind you that the defendant is charged with possessing a motor vehicle *knowing* that motor vehicle had been stolen. And he was charged with possessing a motor vehicle that had been altered with intent to sell, an altered identification number [sic]. *Knowing* [sic] that that identification number had been altered.
> He is not charged with altering. He is not charged with stealing the car. The tools and materials which have just been admitted, to the extent that you give them any weight, are to be considered by you only on the issue of knowledge. They are admitted only on the govern-

that any relevance the seized evidence may have had was substantially outweighed by the danger of unfair prejudice. *See id.* 403.[6]

#### 1. *Fed.R.Evid. 404(b): "Other Acts" Evidence*

■ The district court admitted the tools, materials and license plates for the exclusive purpose of evidencing Tutiven's knowledge that the fourteen vehicles had been stolen and that the VIN on the fourteenth vehicle had been altered. The court repeatedly cautioned the jury accordingly.[7] Tutiven nonetheless insists on appeal that Rule 404(b) absolutely barred the seized evidence because his possession of the tools, materials and license plates enabled no permissible inference relevant to his knowledge that the vehicles had been stolen or their VINs altered.[8]

---

> ment's theory that the possession by the defendant Mr. Tutiven of these tools and materials reflect *in some way on whether Mr. Tutiven knew the motor vehicles charged in the first 13 counts in the indictment were stolen and whether Mr. Tutiven knew that the vehicle identification number on the 1991 Toyota Corolla charged in Count 14 had been altered.*
> So the tools are there to help you decide, if you give the tools any weight at all, whether or not Mr. Tutiven *knew* that the cars had been stolen and *knew* that the identification number in Count 14 had been altered. (emphasis added).

**8.** Tutiven further contends that any inference that he knew the vehicles were stolen must necessarily have been based on conjecture. On the contrary, a fair and reasonable inference that Tutiven knew the vehicles were stolen would proceed directly from the *foundation* inference discussed in the *text* below. *See infra* pp. 5–6.

Nor was there any need for the jury to contravene its instructions, or infringe the stipulation between the parties, by indulging a predicate inference that Tutiven either stole the vehicles or altered their VINs. It was sufficient that Tutiven's possession of VIN-altering tools and materials, in combination with abundant other circumstantial evidence, *see* note 11 *infra*, fairly permitted the synergistic inference that Tutiven knew the illicit purpose to which the tools and materials were suited. Thus, it was the close circumstantial link between Tutiven's possession of the seized VIN-altering equipment *and* the numerous VIN-altered vehicles he sold during this time frame which enabled the jury rationally to accord the seized evidence probative value on the central issue of Tutiven's knowledge.

Evidence Rule 404(b) absolutely bars "other acts" evidence relevant only to prove criminal propensity or bad character. *United States v. Tuesta–Toro*, 29 F.3d 771, 775 (1st Cir.1994). Its *absolute bar* is implicated, however, only if the challenged "other crimes, wrongs, or acts" are relevant *exclusively* to instigate an inference that the defendant is more likely to have acted in similar fashion by committing the offense for which he is on trial. *See, e.g., United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982) (citing Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶ 404–26 (1980); *see also United States v. Ferrer–Cruz*, 899 F.2d 135, 137 (1st Cir.1990). Plainly, by its very terms, *see* note 5 *supra*, Rule 404(b) interposes no *absolute bar* to circumstantial evidence *intrinsic* to the crime for which the defendant is on trial, but only to evidence of *"other* crimes, wrongs, or acts" whose probative value *exclusively* depends upon a forbidden inference of criminal propensity. We recently dealt with a prototypical Rule 404(b) challenge which illustrates the point.

In *United States v. Arias–Montoya*, 967 F.2d 708 (1st Cir.1992), we held that the defendant's prior conviction for cocaine possession was *barred* by Rule 404(b) since it was relevant *only* to establish an evidentiary predicate for a forbidden "criminal propensity" inference: that defendant must have known the trunk of the vehicle he was driving contained cocaine because he had possessed cocaine on a *prior* occasion altogether unrelated to the conduct for which he was on trial. *Id.* at 709–14. By contrast, the probative value of the intrinsic evidence that Tutiven possessed VIN-altering tools and materials, *at or about the time and place these offenses allegedly took place*, in no respect depended upon an impermissible "criminal propensity" inference. Instead, Tutiven's possession of VIN-altering tools and materials, like an alleged burglar's contemporaneous possession of burglary tools, *see, e.g., State v. Romano*, 456 A.2d 746, 760 (R.I. 1983) (upholding admission of burglary tools, seized from defendant's garage, as circumstantial evidence of defendant's role in alleged conspiracy to break and enter), constituted *intrinsic* circumstantial evidence *directly* probative of, *inter alia, see infra* note 12, Tutiven's knowledge that the vehicles he sold to Clair Motors had been stolen. The cases are legion in which similar intrinsic circumstantial evidence has been admitted without occasioning either challenge or analysis under Rule 404(b). *See, e.g., United States v. Ford*, 22 F.3d 374, 381 (1st Cir.1994) (upholding admission of evidence that defendant in drug case possessed instructional materials on methamphetamine manufacture); *United States v. Nason*, 9 F.3d 155, 162 (1st Cir.1993) (upholding admission of scales, bags, and baggies seized from motel room registered to defendant's girlfriend at time of defendant's arrest on the marijuana charges for which he was on trial); *United States v. Cresta*, 825 F.2d 538, 554 (1st Cir.1987) (upholding admission of weapons possessed by defendant during the drug smuggling crime for which he was on trial).

Tutiven relies on *United States v. DeVillio*, 983 F.2d 1185 (2d Cir.1993), as support for the claim that the VIN-altering tools and materials were barred by Rule 404(b). But the *Devillio* court merely ruled that the trial court erred in admitting burglary tools as evidence of the *modus operandi* of the two appellants who were charged only with *transporting* stolen vehicles and stolen goods. *Id.* at 1188. The Second Circuit simply held that the burglary tools bore no special relevance to appellants' *modus operandi* in transporting stolen vehicles and goods. *Id.* at 1194. The court left no doubt, however, that the burglary tools were highly probative evidence against appellants' codefendants, who were on trial for burglary. *See id.*

The absolute bar to admission under Rule 404(b) was not implicated in the present case since it was unnecessary for the jury to resort to an impermissible propensity-based inference. Rather, the seized evidence would enable a rational jury—relying on its common sense and collective experience [9]—to

9. *See, e.g., United States v. Reyes–Mercado*, 22 F.3d 363, 367 (1st Cir.1994) ("[U]ltimately, whether or not the gun[ ] helped [defendant] commit the drug crime is a matter for a jury applying common-sense theories of human nature and causation") (citations omitted); *United*

draw the relevant *foundation* inference that a defendant who possessed VIN-altering tools and materials (and license plates), *at or about the time he sold fourteen stolen vehicles bearing altered VINs,* was somewhat less likely to have been the *innocent victim* of a VIN-altering scheme than would a seller of stolen vehicles who did not possess such paraphernalia.

### 2. Fed.R.Evid. 403: Unfair Prejudice

■ Although the seized evidence did not implicate the absolute bar imposed by Rule 404(b), we must consider Tutiven's companion claim that its admission in evidence on the issue of Tutiven's knowledge that the vehicles were stolen could not survive the relevancy-prejudice balancing required under Rule 403. *Tuesta-Toro,* 29 F.3d at 775.

■ "[T]he threshold for relevance is very low under Federal Rule of Evidence 401. Evidence is relevant under Rule 401 if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *United States v. Cotto-Aponte,* 30 F.3d 4, 6 (1st Cir.1994) (citing *United States v. Nason,* 9 F.3d 155, 162 (1st Cir.1993)), *cert. denied,* — U.S. —, 114 S.Ct. 1331, 127 L.Ed.2d 678 (1994). These tools, materials and license plates readily met the "any tendency" test under Rule 401. *See supra* pp. 5–6; *infra* pp. 6–7; note 11 *infra.*

We are reminded, nonetheless, that Rule 403 "excludes even evidence that is relevant through allowable chains of inference where the probative value of that evidence is 'substantially outweighed,' [*inter alia,*] by the risks of [unfair] prejudice...." *Ferrer-Cruz,* 899 F.2d at 138; *see also United States v. Nickens,* 955 F.2d 112, 125 (1st Cir.1992). However, "[o]nly rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman*

*v. Package Mach. Co.,* 865 F.2d 1331, 1340 (1st Cir.1988), *quoted in United States v. Desmarais,* 938 F.2d 347, 351 (1st Cir.1991).

A recent case illuminates the pertinent relationship between the Rule 404(b) analysis undertaken above, *see supra* pp. 4–6, and the relevancy-prejudice balancing required under Rule 403. In *United States v. Hahn,* 17 F.3d 502 (1st Cir.1994), a search of defendant's automobile—abandoned during the course of the alleged drug conspiracy for which he was on trial—netted a handgun, ammunition, and a round-trip airline ticket between destinations material to the scope of the conspiracy. As the seized evidence constituted classic circumstantial evidence *intrinsic* to the alleged offense for which the defendant was on trial, it was challenged and evaluated only under Rules 401 and 403. *Id.* at 509–10. Evidence that the same defendant had been found in possession of a licensed firearm on another occasion in the course of the alleged conspiracy was challenged as "other acts" evidence under Rule 404(b). *Id.* at 508–09. We held that Rule 404(b) posed no absolute bar because (i) "possession of a licensed firearm is neither a bad act nor indicative of bad character" and (ii) the evidence was directly relevant, *inter alia,* to the geographic scope of the alleged conspiracy and the defendant's role in it. *Id.* at 509. In the ensuing Rule 403 balancing, we went on to make clear that any risk of "prejudice" from the evidence that Hahn possessed a licensed firearm "did not derive *unfairly* from the challenged evidence itself." *Id.* (emphasis added).

And so it is with the evidence admitted in the present case, which permitted the jury *rationally* and *fairly* to infer that Tutiven's contemporaneous possession of tools and materials well-suited to VIN altering made it less likely that he had been duped by an expert VIN-altering scheme. *See, e.g., State v. Meeks,* 65 N.W.2d 76, 78–79, 82 (Iowa 1954) (upholding admission of evidence of "various instruments used by a typical check artist," possessed by defendant at time of

States v. O'Brien, 14 F.3d 703, 708 (1st Cir.1994) ("[I]n ... choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense").

(Citing *United States v. Smith,* 680 F.2d 255, 260 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983)).

arrest, to rebut defense that he had not known that the forged check he allegedly uttered had been forged).[10] The tools, materials and license plates seized from Tutiven's residence provided cogent evidence tending to preempt an essential premise implicit in Tutiven's defense: that the *only way Tutiven could have known* of the sophisticated VIN alterations on the stolen vehicles would have been by visual examination, but since he was not a VIN expert he could not have known the vehicles were stolen. The jury fairly could infer from the challenged evidence, however, that a person—*expert or not*—who *possessed* VIN-altering equipment during the time frame in which he sold numerous stolen vehicles with altered VINs was somewhat more likely to have *known* the equipment was amenable to use in altering VINs and therefore that the vehicles were stolen, there being no other apparent purpose for VIN alterations.[11]

An inference that Tutiven knew the tools and materials seized from his home were suited to VIN altering would tend rather strongly to dispel the no-knowledge premise in his defense. Moreover, in evincing Tutiven's knowledge that the vehicles were stolen, the challenged evidence entailed no significant risk of *unfair* prejudice since simple possession of the tools and materials was neither a bad act nor indicative of bad character. *See Hahn,* 17 F.3d at 509. Finally, the jury instructions given by the district court, *see, e.g., supra* note 7, provided further insulation against unfair propensity-based inferences by the jury. *See Yates v. Evatt,* 500 U.S. 391, 403–04, 111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432 (1991) (reviewing court normally presumes jury followed instructions); *United States v. Daigle,* 14 F.3d 684, 690 (1st Cir. 1994) (holding that cautionary jury instruction minimized possible prejudicial impact from documentary exhibit) (Rule 403).[12]

**B. *U.S.S.G. § 2B1.1(b)(5)(B): The "In-the-Business" Enhancement***

■ As Tutiven failed to preserve the issue below, the sentencing enhancement under U.S.S.G. § 2B1.1(b)(5)(B) is reviewed for "plain error." Fed.R.Crim.P. 52(b).[13] Thus, the defendant must show that the sentencing court committed "clear" or "obvious" error affecting a "substantial right." *United States v. Olano,* — U.S. —, — – —, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); *United States v. Colon–Pagan,* 1 F.3d 80, 81 (1st Cir.1993). "[E]rror rises to this level only when it is so shocking that [it] seriously affect[ed] the fundamental fairness

---

**10.** The Tutiven jury heard testimony that the collective tools and materials were almost uniquely suited to a use (VIN altering) intimately related to the "switching" scheme. Tutiven's residence contained *no other* automobile-related tools or materials. The only other items seized were license plates from jurisdictions where Tutiven's stolen cars originated. *See also* note 4 *supra.*

**11.** The seized evidence fit hand and glove with the cumulative array of circumstantial evidence underpinning the sturdy inference that Tutiven knew the vehicles were stolen. The other circumstantial evidence included Tutiven's sale of fourteen stolen vehicles to Clair Motors within eleven months, all bearing altered VINs, for which Tutiven realized profits ranging from $6,500 to $1,600 per vehicle despite the fact that he was able to sell the vehicles to Clair Motors at bargain prices. *See Commonwealth v. Boris,* 317 Mass. 309, 58 N.E.2d 8, 12 (1944) (low price paid for foodstuffs admitted as evidence that defendant knew he was acquiring stolen goods). The evidence demonstrated that when Tutiven went to Clair Motors he was accompanied by individuals whom he falsely introduced as the owners of the vehicles. Finally, the evidence showed that the title certificates to most of the vehicles had been issued within a month prior to their sale to Clair Motors, that Tutiven conducted all his business in cash, and that he was able, in very short order, to produce vehicles of the type currently in greatest demand.

**12.** The district court instructed the jury, consistent with the parties' stipulation, that the tools and materials were to be considered only in determining whether Tutiven knew the vehicles had been stolen and that the vehicle in Count XIV bore an altered VIN. Among other relevant inferences permissible under Rule 404(b) *but for* this stipulation, were "opportunity," "preparation" and "plan." *See* Fed.R.Evid. 404(b).

**13.** Tutiven urges that we review the sentencing enhancement *de novo* because it touches upon "interpretive questions" under the Sentencing Guidelines. The matter at issue required no guideline interpretation, however, only straightforward fact-finding by the sentencing court, which, even if preserved, we would review only for clear error. *United States v. David,* 940 F.2d 722, 739 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992).

and basic integrity of the proceedings conducted below." *United States v. Ortiz*, 23 F.3d 21, 26 (1st Cir.1994) (citing *United States v. Hodge–Balwing*, 952 F.2d 607, 611 (1st Cir.1991); *United States v. Olivo–Infante*, 938 F.2d 1406, 1412 (1st Cir.1991) (internal quotation marks omitted)). We find no error.

◼ Tutiven complains that the sentencing court made no explicit finding that the offenses of conviction, *viz.*, knowingly possessing stolen motor vehicles (18 U.S.C. § 2313) and knowingly possessing a motor vehicle with altered VINs (18 U.S.C. § 2321), involved knowingly *receiving* stolen property and that the indictment neither included such a charge nor would the trial record support it.[14] The claim that the evidence before the sentencing court would not support a finding that Tutiven knowingly received stolen property is groundless.

As it was stipulated that *Tutiven* did not steal the motor vehicles, yet the jury supportably found beyond a reasonable doubt that he knew the vehicles were stolen, logic pretty much compels the conclusion that Tutiven knowingly "received stolen property." We disposed of an analogous claim in *United States v. Carty*, 993 F.2d 1005 (1st Cir.1993) (prosecution for drug possession and distribution), by reiterating the conclusive observation made by the sentencing judge in that case: "[Y]ou have to buy it to sell it." *Id.* at 1011. The strikingly similar collocation of circumstances substantiating the jury verdicts against Tutiven, *see* note 11 *supra*, provided ample support for finding that he knew these vehicles were stolen, and thus that he was "in the business of receiving and selling stolen property" within the meaning of U.S.S.G. § 2B1.1(b)(5)(B).

### C. *Jury Instruction on Actual Knowledge*

Tutiven concedes that the district court correctly instructed the jury that Counts I through XIII required proof beyond a rea-

sonable doubt that Tutiven had "actual knowledge" that the thirteen vehicles were stolen and, further, that proof of mistake, accident or negligence was insufficient to convict. But he insists that the court erred in refusing to define "negligence" for the jury.

◼ We review the challenged jury instruction against the backdrop of the entire trial. *See United States v. Serino*, 835 F.2d 924, 930 (1st Cir.1987) ("[We do] not judge a single instruction to the jury in isolation, but rather in the context of the overall charge."); *see also United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975). And, of course, "[i]t is well settled that the court 'need not give instructions in the precise form or language requested by the defendant.'" *United States v. Noone*, 913 F.2d 20, 30 (1st Cir.1990), *cert. denied*, 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991) (quoting *United States v. Beltran*, 761 F.2d 1, 11 (1st Cir.1985)).

◼ In its preliminary instructions outlining the essential elements of the crimes charged in the indictment, the district court told the jury that it could convict only if it found "that at the time Fidel Tutiven possessed [the car] or sold it, he knew, he had knowledge, that the car that he possessed or was selling was stolen." Following closing arguments, the court reinforced its instruction on knowledge:

> To sustain its burden of proof for each of Counts 1 through 13, the government must prove beyond a reasonable doubt.... [that] this defendant kn[e]w that motor vehicle was stolen at the time he possessed it?
>
> So you should ask yourselves.... has the government proved beyond a reasonable doubt that this defendant knew that the car was stolen at the time he possessed it?[15]

---

14. U.S.S.G. § 2B1.1(b)(5)(B) provides:
   If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels.
   The scope and operation of the "in-the-business" enhancement is explained in considerable detail

in *United States v. St. Cyr*, 977 F.2d 698, 702–04 (1st Cir.1992).

15. In their closing arguments, counsel emphasized the "knowledge" element. Government counsel stated: "I ask you to find that, in fact, Fidel Tutiven knew exactly what he was doing;

Thus, viewed in the context of the entire charge and particularly the trial judge's repeated admonitions that evidence of negligence was insufficient to convict, there is no question that the jury instructions on the necessity for proof of actual knowledge were both clear and correct.

Finding no error, we affirm the district court judgment.

*Affirmed.*

that he knew he was the point person in a stolen car ring; that he knew he was selling stolen cars and he knew that the VINs had been altered." And defense counsel adeptly underlined the inadequacy of a "negligence" finding:

As Judge Mazzone will instruct you on the law, it is not enough to say that Mr. Tutiven should have known the cars were stolen. It's not enough to say that he should have known that the identification numbers were altered. It's not enough for Mr. Feeley to prove to you that a reasonable person would have known that the cars were stolen or that a reasonable person would have known that the identification numbers were altered. The government has to prove to you that Mr. Tutiven actually knew. In fact—and I suppose they have to prove that to you beyond a reasonable doubt.