John **BELMONTE**, et al., Plaintiffs,

v.

David H. **LAWSON**, et al., Defendants.

Civ. A. No. 90–00529–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 14, 1990.

Jonathan Shapiro, Jonathan Shapiro & Associates, P.C., Alexandria, Va., for plaintiffs.

Jack L. Gould, Fairfax, Va., for Jonathan R. Williams.

Wallace Dudley, Alexandria, Va., for David H. Lawson, Allan R. MacDonald, Mary Provost.

Robert S. Corish, Slenker, Brandt, Jennings & Johnson, Merrifield, Va., for S. Williams.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter is before the Court on plaintiffs' appeal from the Magistrate's Order denying plaintiffs' motion to compel and granting defendant Williams' request for a protective order against the taking of any discovery in derogation of defendant's Fifth Amendment privilege against self-incrimination. The specific question presented is whether a party may invoke the Fifth Amendment privilege where, as here, the statute of limitations has run on any possible state criminal prosecution and the federal prosecutor, by affidavit, avers that there is no "reasonable likelihood of any federal prosecution." Plaintiffs, seeking to compel defendant's testimony over the Fifth Amendment claim, assert that the privilege is not available here because there is no "realistic possibility" of prosecution. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 266 n. 1, 103 S.Ct. 608, 618 n. 1, 74 L.Ed.2d 430 (1983) (Marshall, J., concurring). Defendant resists on the ground that the "realistic possibility" standard is not met here, and that *res judicata* bars the parties from relitigating the issue in this case because an essentially similar issue was disposed of by the state court in a previous, related proceeding.

Because it cannot be said that there is no realistic possibility of prosecution, the Court concludes that defendant is entitled to invoke his privilege against self-incrimination and therefore affirms the Magistrate's ruling.

## Facts

Plaintiffs are mentally handicapped individuals who, from October 1985 through December 1986, resided at the Northern Virginia Training Center ("Center") in Fairfax County, Virginia. Defendants were staff members at the Center during this period. In their complaint, plaintiffs alleged they were physically abused by defendants throughout this period. The alleged abuse consisted of defendants striking plaintiffs on the chest and other parts of the body with their fists, kicking plaintiffs, pulling plaintiffs' hair and other abusive behavior. Defendant Williams was one of the alleged abusers. Early in the authorities' investigation of this matter, Williams admitted his involvement in the abusive behavior to the Center's Director, to state police investigating the matter and to a Fairfax Adult Services Investigator. At the time he made these admissions, Williams was under the mistaken impression that he had been given complete immunity from state prosecution. In fact, he was never given such immunity.

Thereafter, in the course of discovery, Williams invoked his Fifth Amendment privilege in refusing to respond to requests to admit and other discovery aimed at his knowledge of, and involvement in, the alleged abuse. More specifically, he declined to answer the following requests to admit:

1. The statements attributed to Jonathan Williams on page 7 of the attached document were made by him and are true.

2. Jonathan Williams hit John Belmonte in the stomach and chest while on duty at the Northern Virginia Training Center.

3. Jonathan Williams frequently hit John Belmonte while on duty at the Northern Virginia Training Center.

4. Jonathan Williams hit residents aside from John Belmonte while on duty at the Northern Virginia Training Center.

5. Jonathan Williams frequently hit residents aside from John Belmonte while on duty at the Northern Virginia Training Center.

6. The statements attributed to Jonathan Williams in the attached document were all made by him. For purposes of this request, please assume that the deleted name is the name of the appropriate resident at NVTC. Please specifically identify which, if any, you claim were not made by you.

7. The statements attributed to Jonathan Williams in the attached document are all true. For purposes of this request, please assume that the deleted name is the name of the appropriate resident at NVTC. Please identify which, if any, you claim are not true.

It is not difficult to see that all of these requests "required answers that would forge links in a chain of facts imperiling [Williams] ... with conviction of a federal crime." *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

In the face of Williams' refusal to respond to discovery, plaintiff filed a motion to compel. Williams countered with a request for a protective order against the taking of any discovery in violation of his Fifth Amendment privilege. The matter was heard by the Magistrate, who upheld the privilege claim. This appeal followed.

## Analysis

■ The motion to compel rests chiefly on plaintiffs' contention that Williams cannot rely on the Fifth Amendment because there is no reasonable possibility that he would face prosecution as a result of truthful discovery responses.[1] In support, plaintiffs point out that any state prosecution would be barred by the statute of limitations[2] and any federal prosecution, while not yet similarly barred,[3] will never occur, as it has been disavowed by the federal prosecutor. A supporting affidavit from the United States Attorney reflects that the matter was investigated, the evidence reviewed and a decision then made not to prosecute. The affidavit further reflects that the file has been closed and no further investigation is contemplated. The United States Attorney concludes as follows:

In my opinion, there is no reasonable likelihood of any federal criminal prosecution of any staff members at the Northern Virginia Training Center for abuse of residents occurring between 1985 and 1987.[4]

The question presented is whether the privilege may be validly invoked under these circumstances.

While there is no Supreme Court or circuit authority directly on point, the dispositive legal principle is well settled. Almost a century ago, the Supreme Court in *Brown v. Walker*, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896) recognized that the privilege against self incrimination was not to be invoked where prosecution was no more than an imaginary possibility, a prospect too remote to be anything other than

1. Williams also argues that a state court's ruling upholding the privilege in an essentially identical state court case should be given preclusive effect *res judicata*. In response, plaintiffs contend that *res judicata* is inapplicable because the state court order is not final, because new facts are here presented and because a prior state court ruling does not excuse a federal court from examining anew any claim of constitutional privilege asserted in a federal case. Because this Court independently reaches the same result as the state court ruling, it need not and does not reach or decide the *res judicata* dispute.

2. Plaintiffs assert (and Williams apparently concedes) that any state prosecution became barred after January 1988. Va.Code § 19.2–8.

3. Because a five-year statute of limitations applies to the alleged offenses, Williams is still subject to federal prosecution. *See* 18 U.S.C. § 241 (conspiracy to injure or intimidate any person in the free exercise of their constitutional rights); 18 U.S.C. § 3282 (five-year statute of limitations for non-capital offenses).

4. Plaintiffs also submitted a letter from an Assistant United States Attorney apparently responding to plaintiffs' counsel's inquiry concerning the prospect for future prosecution. The letter states that the United States Attorney has "declined prosecution of the [Center] employees implicated several years ago in the alleged abuse of [Center] patients. Accordingly, there will be no prosecution by this office of Jonathan Williams and others."

fanciful.[5] Not long thereafter, the Supreme Court again had occasion to invoke this principle. In *Mason v. United States*, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917), the Court affirmed a trial Court ruling requiring a witness to testify in a grand jury gambling investigation despite that witness' invocation of the privilege. In the Court's words,

> The constitutional protection against self-incrimination "is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law." *Heike v. United States*, 227 U.S. 131, 144 [33 S.Ct. 226, 228, 57 L.Ed. 450] [1913].
>
> \*  \*  \*  \*  \*  \*
>
> In *Reg. v. Boyes* (1861) 1 Best & S. 311, 329, 330 ... Cockburn, Ch. J., said ... "We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding *inter alios*, protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

244 U.S. at 365, 366, 37 S.Ct. at 622.

The next prominent statement of the general principle appears in *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951), where the Supreme Court upheld the privilege because "it was not *'perfectly clear*, from a consideration of all the circumstances in the case, ... that the answer[s] *cannot possibly* have such a tendency' to incriminate" (quoting from *Temple v. Commonwealth*, 75 Va. 892, 898 (1880) (emphasis in the original). We owe the most recent formulation of the general principle to Justice Marshall. In a concurring opinion in *The Pillsbury Company v. Conboy*, 459 U.S. 248, 266 n. 1, 103 S.Ct. 608, 618 n. 1, 74 L.Ed.2d 430 (1983), he states:

> A witness is generally entitled to invoke the Fifth Amendment privilege against self-incrimination whenever there is a realistic possibility that his answer to a question can be used in any way to convict him of a crime. It need not be probable that a criminal prosecution will be brought or that the witness' answer will be introduced in a later prosecution; the witness need only show a realistic possibility that his answer will be used against him.

*See also United States v. Seewald*, 450 F.2d 1159, 1163 (2d Cir.1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1206, 31 L.Ed.2d 253 (1972); *In re Master Key Litigation*, 507 F.2d 292 (9th Cir.1974); *compare Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972) (privilege against self-incrimination protects against real dangers, not remote and speculative possibilities).

The precise question presented is therefore whether, given the facts at bar, there is any realistic possibility that Williams would be prosecuted if compelled to testify. Measured against this standard, the privilege here prevails. The Court cannot confidently conclude that there is no realistic possibility of prosecution in the event Williams is compelled to testify. While the United States Attorney disavows any *current intention* to prosecute, the future is

---

**5.** The Court in *Brown* further stated that the danger of permitting the privilege to be invoked unnecessarily is that:

> The danger of extending the principle announced in *Counselman v. Hitchcock* [142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892)] is that the privilege may be put forward for a sentimental reason, or for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person, who is interested in concealing the facts to which he would testify. Every good citizen is bound to aid in the enforcement of the law, and has no right to permit himself, under the pretext of shielding his own good name, to be made the tool of others, who are desirous of seeking shelter behind his privilege.

161 U.S. at 600, 16 S.Ct. at 648.

more problematical. First, it must be said that there is no legal bar to a prosecution; the federal statute of limitations has not yet expired. The government's current intention not to prosecute is merely a discretionary decision made by the current United States Attorney based on the information currently available. But the future is not so clear for this United States Attorney has revealed plans to leave office soon and moreover, there is no means of knowing the nature and scope of any incriminating evidence Williams might give. A new prosecutor faced with new evidence in such a publicly sensitive context might well reach a different prosecutorial decision.[6] Under these circumstances, therefore, a realistic possibility of prosecution cannot be excluded, and it follows that Williams' assertion of the privilege is valid and must be upheld.

 The heart of this conclusion is the recognition that the right to assert the privilege "does not depend upon the *likelihood,* but upon the *possibility* of prosecution." *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir.1974) (emphasis in the original); *accord In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 872 (7th Cir.1979). Further, it is important to note that in assessing whether such a possibility exists, courts should avoid engaging in crystal ball forecasts about what a prosecutor may or may not do. Instead, the focus should be on more reliable, traditional factors such as statutes of limitations, double jeopardy and the grant of immunity. Thus, the privilege should not be upheld where a prosecution is barred by the statute of limitations or the doctrine of double jeopardy or where a grant of immu-

nity precludes use of the responses against the witness. In the absence of any of these factors, a judge is left to speculate about the likelihood of a prosecution. But "a judge's prediction as to the likelihood of a prosecutor filing an indictment is not dispositive in ascertaining the permissible scope of a claim of fifth amendment privilege." *In re Folding Carton Antitrust Litigation,* 609 F.2d at 872; *see also United States v. Miranti,* 253 F.2d 135 (2d Cir.1957). In the case at bar there is no statute of limitations or double jeopardy bar, nor is there any grant of immunity. There is only the current prosecutor's statement that, based on what he now knows, no prosecution is planned. This is insufficient to override the privilege. Where, as here, "a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *In re Folding Carton Antitrust Litigation,* 609 F.2d at 871.

Accordingly, the Court affirms the Magistrate's denial of the motion to compel and grant of a protective order against the taking of any discovery in derogation of Williams' Fifth Amendment privilege against self-incrimination.[7]

An appropriate order has issued.

---

**6.** The prosecutor, in his affidavit, recognized the "hypothetical possibility that new information may come to light that may require further investigation...." He thought that such a possibility was unlikely in view of what he termed "a thorough investigation."

**7.** Plaintiffs complain that this result is unfair and serves only to deprive the jury of the truth. Such an argument cannot, of course, override the privilege. Worth noting, however, is that a partial answer to plaintiffs' concerns is that Williams' claim of privilege may be admissible evidence from which the jury may draw whatever inferences it deems warranted. At least five circuits have approved calling a witness to the

stand even when that witness has made known an intention to invoke the self-incrimination privilege. *See Cerro Gordo Charity v. Fireman's Fund Life Ins.,* 819 F.2d 1471 (8th Cir.1987); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271 (3d Cir.1986); *Pagel, Inc. v. S.E.C.,* 803 F.2d 942 (8th Cir.1986); *Brink's Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983); *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924 (7th Cir.1983); *Farace v. Independent Fire Ins. Co.,* 699 F.2d 204 (5th Cir.1983); *see also Cabral–Avila v. INS,* 589 F.2d 957 (9th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979); *United States v. Alderete–Deras,* 743 F.2d 645 (9th Cir.1984);

*Penfield v. Venuti,* 589 F.Supp. 250 (D.Conn. 1984). This issue is not now before the Court and, if later raised, it must be considered and decided in context under Rules 401, 403, Fed.R. Evid.