48 F.3d 1218
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Joseph Andrew SADLER, Defendant-Appellant.
 No. 94-5132.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1994.
Decided Feb. 22, 1995.
 
 ARGUED: C. Timothy Sullivan, Jr., Greenville, SC, for appellant. David Calhoun Stephens, Asst. U.S. Atty., Greenville, SC, for appellee. ON BRIEF: J. Preston Strom, Jr., U.S. Atty., Columbia, SC, for appellee.
 Before MOTZ, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and MESSITTE, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 I.
 
 1
 Joseph Andrew Sadler (known as Andrew or Drew Sadler), was convicted, after a jury trial, of conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. Sec. 846, Sec. 841(a)(1), and Secs. 860 and 861. He was sentenced to a term of 400 months with a 10 year period of supervised release. On appeal, he contends that the district court erred in refusing to admit into evidence, during his counsel's cross-examination of a police detective, the written statement of a non-testifying confidential informant. We review de novo Sadler's claim that the court's evidentiary ruling denied him his Sixth Amendment right of confrontation. See United States v. Williams, 41 F.3d 192 (4th Cir.1994). Finding no error, we shall affirm.
 
 II.
 
 2
 In the course of the investigation that led up to Sadler's prosecution, the Government engaged a confidential informant known as Harry Bob Fowler or "Georgia Slim." Fowler was used by the Government to make monitored controlled buys of drugs from members of the suspected conspiracy. The record shows that Fowler was involved in two undercover buys, one on January 29, 1993, the second on February 4, 1993.
 
 
 3
 A cooperating co-defendant, Sheldon Dendy, described the February 4, 1993, transaction at trial.[1] Dendy testified that on that date, Fowler came to his home, which was next door to the home of Sadler and Sadler's brother and co-defendant Jimmy Sadler, after having sought out Jimmy Sadler in order to purchase drugs. Dendy further testified that he and Fowler went back to the Sadler family home, had a conversation with Andrew Sadler and that Andrew,[2] after speaking with his brother Jimmy by telephone, provided Dendy with a quantity of crack cocaine, which Dendy then gave to Fowler.
 
 
 4
 A tape recording of this transaction was made by means of a body wire Fowler was wearing at the time, which Dendy identified at trial as an accurate recording of the conversation that had taken place between himself, Fowler and Andrew on the occasion in question. Without objection, the recording was moved into evidence and played for the jury, which was also provided with a written transcript. A later witness, Detective Kelly Riggs, who had apparently monitored the transaction while it was being recorded, also identified the voices of Fowler, Dendy and Andrew on the tape.
 
 
 5
 Though named by the Government as a potential witness, Fowler was never called to testify. In the midst of trial, the Government indicated that, although it had intended to call him, it belatedly learned that Fowler had been arrested by local authorities on unrelated charges and was in custody during the trial. Andrew claimed surprise on the grounds that a written statement Fowler had given the police on the same day the recording was made was at odds with what was on the tape.[3] His counsel thus sought leave, as part of his cross-examination of Detective Riggs, to introduce Fowler's statement in evidence. Both the Government and co-defendant Jimmy Sadler objected, however, and the court held the statement inadmissible. Andrew's counsel subsequently elicited from Detective Riggs the concession that the story Dendy told in court was not the same story that Riggs, relying on the Fowler statement, had told the grand jury, i.e. that Andrew had merely answered the door when Dendy and Fowler came over, had thereafter walked away, and that the drug transaction was with Andrew's brother Jimmy.
 
 III.
 
 6
 Andrew's argument regarding his Sixth Amendment right of confrontation is, to a considerable extent, misdirected. What he basically claims is that Fowler, in one fashion or another, was permitted to be a witness against him and he was not afforded his right to confront him. Thus, the initial focus of Sadler's constitutional concern, it would seem, ought to be upon the district court's decision to admit the tape recording on which Fowler's voice appears.[4] To the extent Fowler functions as a witness on the tape, a confrontation argument might have some plausibility. But while Fed.R.Evid. 806 provides that the credibility of the declarant of a hearsay statement may be attacked by any evidence which would be admissible for that purpose if the declarant had testified as a witness, e.g. by evidence of bias, interest, prejudice, prior conviction of a crime, or inconsistent statements, the rule does not apply to statements which are not hearsay. See Fed.R.Evid. 801(c); see also United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir.1988); United States v. Price, 792 F.2d 994 (11th Cir.1986); United States v. Lemonakis, 485 F.2d 941 (D.C.Cir.1993). As the United States Court of Appeals for the District of Columbia posed the proposition in Lemonakis:
 
 
 7
 Scouloukas' statements would accompany those of Lemonakis not as evidence of truth of the former's contents but, to the extent to which the appellant's responses constituted incriminating admissions of his own, to make those responses intelligible to the jury and recognizable as admissions. That the statements were made is all that is important, and the recordings themselves suffice to establish that. The right to cross-examine the absent informant under oath, to test his recollection, prove his motives, and permit the jury to consider his demeanor is therefore inapplicable, and hearsay considerations do not operate as a bar to admissibility. (Footnote and citations omitted)
 
 
 8
 485 F.2d at 948-49.
 
 
 9
 In this case, Fowler's words on the tape did not characterize Andrew Sadler's acts nor indeed did they state any facts at all. Their only significance was that they were spoken and spoken to someone who, on the basis of Dendy and Riggs' in-court testimony, was identified as Andrew Sadler. Simply because Andrew may have said or done things in response to Fowler's words, the nature of Fowler's own statement was not altered. There was accordingly no occasion for Andrew's counsel to in effect cross-examine the absent Fowler by use of his written statement at trial.[5]
 
 
 10
 On the other hand, what Andrew may really be arguing is that the Fowler statement ought to have been admitted, not to impeach Fowler, but to prove that Andrew was not involved in the drug transaction. In that sense, of course, no Sixth Amendment right of confrontation would be implicated, merely the right to present evidence.[6] And in that sense, the statement would then be offered for the truth of the matter, which would be hearsay by definition. See Fed.R.Evid. 801(c). Thus, to qualify for admissibility, the statement would have to come within one of the recognized exceptions to the hearsay rule. Fed.R.Evid. 802. Andrew cites no exception to us, just as he cited none at trial, for indeed there is no apparent exception. The most logical fit for the Fowler statement would seem to be as a declaration against penal interest. See Fed.R.Evid. 804(b)(3).[7] But inasmuch as a paid informant's statements are not against his penal interest, see e.g. United States v. DeVillio, 983 F.2d 1185 (2d Cir.1993); see also Torcasio, 959 F.2d at 507, they cannot qualify under this exception. Moreover, where, as here, the out-of-court statement is offered to exculpate the defendant, Rule 804(b)(3) requires corroborating circumstances clearly indicating the trustworthiness of the statement. Unfortunately for Andrew, Fowler's reputation as a "liar" made fulfillment of that condition impossible.[8]
 
 
 11
 Finally, assuming there were a theory of admissibility for the Fowler statement, Andrew has demonstrated no prejudice by its exclusion. See Fed.R.Evid. 103. In his questioning of Detective Riggs concerning the latter's grand jury testimony, Andrew's counsel was essentially able to elicit the contents of the Fowler statement in their entirety. The district court, in sum, acted properly in excluding the evidence.
 
 
 12
 Accordingly the decision of the district court is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Assistant U.S. Attorney examining Dendy erroneously referred to this date as January 20, 1993, but overall review of the transcript indicates that the intended reference was February 4, 1993
 
 
 [2]
 We shall refer to Appellant as Andrew to distinguish him from his brother and co-defendant Jimmy Sadler
 
 
 [3]
 Fowler's written statement dated February 4, 1993 read as follows:
 I met with Lt. Blackburn @ Timmon Park and got $600 to buy crack. I left and went to Jimmy Sadlers house on Haynie St. I knocked and he wasn't there. So I went next door. The guy there walked back over to Sadlers and I knocked at that door. Jimmy's brother came to the door. I told him I wanted two packs and he said "wait a minute." He went to the back and got Jimmy. Jimmy came up front. I told Jimmy I wanted two breakdown packs. Jimmy handed the packs to the guy from next door. We went back to his house. I counted out the money and he gave me the dope. I left and met back at Timmon Park and gave the dope to the detectives.
 /s/ Bob Fowler
 2-4-93
 
 
 [4]
 Although he does not frame it as a separate issue, Andrew also complains that he was prejudiced by the Government's failure to produce Fowler at trial. It is clear, however, that the Government is not required to call a given witness at trial particularly where, as here, there appears to be universal agreement that the witness has major credibility problems. Thus, Detective Riggs, when asked by the prosecutor if Fowler was a "reputable member of society," replied: "To be quite frank, no.... He's a pimp." Commenting on Fowler's "credibility," Detective Riggs responded, "(i)t's gone downhill rather quickly." In his brief to this Court, Andrew states that the Government "did not want Georgia Slim on the stand because he was a known liar, pimp, and drug dealer."
 
 
 [5]
 The tape was properly authenticated at trial by one of the participants in the conversation (Dendy) and by a second individual who could identify the voices of the participants (Detective Riggs). See Fed.R.Evid. 901(b)(5)
 
 
 [6]
 Accordingly the district court's evidentiary ruling would be entitled to substantial deference and would not be reversed absent a clear abuse of discretion. See United States v. Moore, 27 F.3d 969, 979 (4th Cir.1994); United States v. Torcasio, 959 F.2d 503, 507 (4th Cir.1992)
 
 
 [7]
 Rule 804. Hearsay Exceptions; Declarant Unavailable
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 
 
 [8]
 For the same reason, the catch-all provision of Federal Rule of Evidence 803(24) will not serve; the "circumstantial guaranties of trustworthiness" required by that rule would also be lacking