Schroeder v. Sager Elec. Supply        CV-95-181-SD   10/29/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Mary-Ann Schroeder


       v.                                    Civil No. 95-181-SD


Sager Electrical
 Supply Company, Inc.


                         O R D E R


     In a one-count complaint, plaintiff Mary-Ann Schroeder, a

former salesperson working for the defendant, alleges that she

was continuously denied promotions and then constructively

discharged on account of her gender in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

     Presently before the court are: (1) defendant's motion for

summary judgment[1] (document 10), accompanied by plaintiff's

objection and defendant's reply; (2) defendant's motion for a

protective order pursuant to Rule 26(c)(1), Fed. R. Civ. P.

(document 16), to which plaintiff objects; (3) defendant's motion

_____

     [1]As matters outside the pleadings have been presented by
defendant's motion, and both parties have submitted supporting
documents, the court converts defendant's motion to dismiss
"and/or" for summary judgment to simply a motion for summary
judgment.  See Rule 12(b), Fed. R. Civ. P.

to exclude expert testimony (document 17), to which plaintiff objects; (4) plaintiff's motion to compel defendant's answers to interrogatories (document 18), to which defendant objects; and (5) plaintiff's motion for leave to amend the complaint (document 26), to which defendant objects.

## Background

On April 30, 1984, plaintiff Schroeder was hired as a salesperson by defendant Sager Electrical Supply Company and was promoted to the position of outside salesperson six months later. In 1988, while Schroeder was still working as an outside salesperson, a man allegedly less qualified than she and who had children was hired for the job of sales manager, a position senior to that of salesperson. She was allegedly told that she did not get the job because she had recently married a man with three children and "she would want to spend more time at home." Complaint ¶ 11.

Schroeder was then passed over for promotion in 1990 and again in 1994, when defendant hired men to fill a branch manager position and a sales manager position, respectively. Schroeder claims she was more qualified than both men. The complaint further alleges that Schroeder was denied branch manager positions "in locations across the country, although such

2

positions were offered to her male co-workers who were less qualified and less senior than [she]."  Complaint ¶ 18.

After writing a letter to defendant in August of 1994, in which she informed it of the discrimination, Schroeder filed a Charge of Discrimination with the New Hampshire Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) on October 7, 1994.  The EEOC issued her a Notice of Right to Sue on January 12, 1995; Schroeder then filed the action in this court on April 6, 1995.

## Discussion

### 1.  Defendant's Motion for Summary Judgment.

#### a.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477

3

U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.  Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

4

b.  Plaintiff's Continuing Violation Theory

Defendant first argues that to the extent plaintiff's claim relies on a discriminatory promotion occurring in 1988 it is time-barred by the applicable limitations period.  Plaintiff does not dispute that the relevant limitations period is 300 days prior to the filing of plaintiff's charge with the EEOC and that the 1988 event occurred outside such period.  See 42 U.S.C. § 2000e-5(e)(1).  However, she contends that as defendant's conduct makes up a continuing violation, she can be awarded a remedy reflecting discriminatory conduct that occurred both within and without the limitations period.  Continuing violations may be either systemic or serial.  See Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993).


(1) Serial Violation

A serial violation is defined as "'a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII.'"  Id. (quoting Sabree v. United Bhd. of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990).  Once a Title VII plaintiff has shown that discriminatory conduct has occurred within the actionable period, she may also recover for those "portions of the persistent process of illegal discrimination

that antedated the limitations period." <u>Sabree</u>, <u>supra</u>, 921 F.2d at 401 (quotation omitted). However, as the theory would not extend to the "mere effects or consequences of past discrimination," the plaintiff must first show that an independent violation of Title VII occurred within the limitations period. <u>Id.</u>

For the sole purpose of discussing the continuing violation theory, the court will assume that the alleged promotion pass-over which occurred in 1994 was an independent discriminatory act occurring within the limitations period. Furthermore, the court has assumed that plaintiff's allegations that she was continuously passed over for promotion sufficiently show the "continuing" nature of the violations. <u>Cf. Jensen v. Frank</u>, 912 F.2d 517, 522 (1st Cir. 1990) (observing that serial violation occurs where employee is repeatedly passed over for promotion).

At issue here is whether the relationship between the timely and untimely acts is so substantial as to justify an expanded remedy. <u>See Sabree</u>, <u>supra</u>, 921 F.2d at 401. Central to the inquiry is whether the untimely act had sufficient permanence to "'trigger an employee's awareness and duty to assert his or her rights.'" <u>Id.</u> at 402. A plaintiff who knowingly fails to seek relief cannot later be compensated for the untimely conduct when

6

it turns out that it formed part of a continuing violation. <u>See</u> <u>id.</u> However, a plaintiff who is <u>unable</u> to discern that he is being discriminated against until a series of events have taken place is eligible to be compensated for all acts forming part of the pattern of discrimination. <u>See</u> <u>id.</u>

In this case, plaintiff does not contest that when her immediate supervisor, P.J. Murphy, told her in 1988 that a man had been promoted ahead of her because she had three new stepchildren, she knew that she was being discriminated against on the basis of her gender. <u>See</u> Affidavit of Mary-Ann Schroeder ¶ 1 (attached to plaintiff's objection). Indeed, she even confronted Murphy and informed him that she was being discriminated against. <u>Id.</u> ¶ 4. When describing her meeting with Murphy in her deposition, Schroeder stated, "But no, I did not yell. I didn't, no. But I was very adamant that it was discrimination, that they couldn't tell me that I couldn't get the promotion because I had three kids. I didn't base it on my ability at all." Schroeder Deposition at 81. She asserts she thought at that time that it was only an "isolated" event and that she was unable to discern that the discrimination would be repeated. Schroeder Affidavit ¶¶ 2, 7. She further states that it was not until several discriminatory incidents had occurred that she realized that the first pass-over for promotion was part

7

of a "policy or pattern" of discrimination.  Id. ¶ 8.

Although the court sympathizes with plaintiff's position, the present state of affairs clearly indicates that she cannot be awarded damages that would reach back to the alleged discriminatory acts that occurred in 1988.  Given her admission that she knew at the time that her employer's failure to promote her was discriminatory, she had an obligation to assert her rights in a timely fashion.[2]  Unlike sexual harassment, which often does not become actionable or completely visible to an employee until sufficient events have built up, a discriminatory

---

[2]As an aside, the court notes that although Schroeder admits in her affidavit that she informed her supervisor that his conduct was discriminatory, she also states that she did not believe she had been discriminated against.  See Schroeder Affidavit ¶ 5.  This latter statement, however, directly contradicts her deposition testimony, in which she states,

> Q:  . . . In 1988 did you believe you were discriminated against because you were a woman when Widge was promoted?
> A.  I believe that was part of it.  I was also discriminated on because I had got married and had three stepchildren.

Schroeder Deposition at 85.  In this circuit, it is well settled that when, as here, an interested witness "has given clear answers to unambiguous questions," summary judgment cannot be avoided by her reliance on a contradictory affidavit when she has not satisfactorily explained why she has changed her testimony.  See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).  Given this rule and that plaintiff has not produced an explanation for her change in testimony, the court has not credited that portion of her affidavit in which she states she did not believe she had been discriminated against in 1988.

8

employment decision such as a promotion pass-over is a discrete event that has the requisite "permanence" to alert a plaintiff that her rights have been violated; in addition, it is independently actionable.  Although plaintiff proffers reasons and explanations for her decision to not pursue a legal claim, they have not persuaded the court to deviate from the ordinary rules governing the running of the limitations period.  Accordingly, the court grants defendant's motion insofar as it seeks to bar plaintiff from receiving a remedy for defendant's conduct in 1988.[3]

### (2) Systemic Violation

Plaintiff also contends that defendant's treatment of her was a discriminatory practice that constituted a systemic violation, another recognized form of continuing violation.  More precisely, plaintiff claims she was unable to discern defendant's discriminatory practice until after she had been passed over for promotion on several occasions.

_____

[3]The court expresses no opinion here as to whether plaintiff can recover for other events that occurred after 1988. Furthermore, nothing herein would preclude plaintiff from using the event of 1988 as evidence at trial.  See Sabree, supra, 921 F.2d at 400 n.9.

A systemic violation occurs when an employer follows a discriminatory policy or practice. See Jensen, supra, 912 F.2d at 523. The rationale behind permitting an employee to recover for both timely and untimely acts forming part of the discriminatory practice or policy is that such policy produces effects that may not "manifest themselves as individually discriminatory except in cumulation over a period of time." Glass v. Petro-Tex, 757 F.2d 1554, 1561 (5th Cir. 1985).

Here, as plaintiff was able to discern that the first promotion pass-over was discriminatory, she is not helped by a systemic violation theory. Thus, the same reason undermining her serial violation theory also prevents her from employing a systemic violation theory: She had adequate notice of the discrimination to trigger her obligation to assert her rights.

Her systemic violation theory is likely undermined for an additional reason. In order to substantiate a claim, plaintiff must adduce evidence showing that a tangible policy or practice of discrimination was in effect. General references to "some vague, undefined policy of discrimination" will not suffice to avoid summary judgment. See Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 183-84 (1st Cir. 1989). Moreover, the evidence should go beyond showing that the discrimination was aimed at one individual, and instead should support that the

10

employer followed a <u>policy</u> or <u>practice</u> that was discriminatory.

Plaintiff argues, and the court agrees, that an employer who follows a discriminatory policy or practice in relation to promotions may be committing a continuing violation that is "systemic." However, plaintiff has submitted no evidence to show that an overall policy or practice was in effect during the statutory period and instead relies on evidence suggesting only that the discrimination was targeted at <u>her</u> individually. <u>Cf.</u> <u>id.</u> (noting that complaint asserting continuing violation theory based on discrimination against individual had not properly stated that employer had an overall policy of discrimination). Accordingly, as there is no evidence suggesting defendant committed a "systemic" violation, as opposed to repeated incidents of discrimination against plaintiff individually, plaintiff cannot employ a continuing violation theory premised on a "systemic" violation to make defendant's conduct in 1988 presently actionable.

### c. Plaintiffs' Evidence of Discriminatory Intent

Sager further argues that it is entitled to summary judgment with regard to any purported discriminatory refusal to promote Schroeder after 1988 because plaintiff has no evidence that Sager's conduct after 1988 was a product of gender-based

discrimination.

There being no direct evidence of defendant's discriminatory animus regarding any of plaintiff's <u>timely</u> claims (as opposed to the 1988 promotion pass-over), the parties' respective burdens of production are governed by the three-step burden-shifting process set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973).  Under said scheme, the employee must first establish a prima facie case of discrimination.  To establish a prima facie case of discrimination in a promotion decision, plaintiff must tender evidence showing:

> 1) that the plaintiff is within a class protected by Title VII; 2) that plaintiff applied, and was qualified for the position for which the employer was seeking a replacement; 3) that despite plaintiff's qualifications he or she was rejected; and 4) that after plaintiff's rejection the position was filled or continued its efforts to fill, the position with someone with complainant's qualifications.

<u>Petitti v. New England Tel. & Tel. Co.</u>, 909 F.2d 28, 32 (1st Cir. 1990).

Although plaintiff retains at all times the burden of persuasion, a prima facie showing will have the effect of shifting the burden of <u>production</u> to the defendant to articulate a legitimate nondiscriminatory reason for its employment action. <u>See</u> <u>Udo v. Tomes</u>, 54 F.3d 9, 12 (1st Cir. 1995) (citing <u>St.</u>

12

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Once defendant has cleared its hurdle, the burden of production shifts back to plaintiff, who must then prove that the employer's justification is "a pretext for discrimination." Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996). To satisfy its burden, plaintiff must introduce evidence sufficient "for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." See Udo, supra, 54 F.3d at 13.

In applying the burden-shifting scheme, the court will first focus on whether plaintiff can avoid summary judgment on her claim that she was discriminated against in 1994 when Sager promoted Rick Dezeil to the position of outside sales manager, despite that fact that plaintiff had ten years of outside sales experience. As discussed in the previous section, before receiving the benefit of a continuing violation theory, plaintiff must prove the existence of an independent violation of Title VII, within the limitations period. See Sabree, supra, 921 F.2d at 401. Accordingly, before considering the promotion decisions that occurred outside the limitations period, the court will first determine whether plaintiff can avoid summary judgment on her claim that Sager's decision to promote Dezeil to the position of outside sales manager in 1994 was motivated by discriminatory

13

intent.

### (1) Plaintiff's Prima Facie Case

Although defendant has not directly challenged whether plaintiff has satisfied the relatively light requirements of making out a prima facie case of discrimination, the court will nonetheless briefly address some of the more relevant aspects of this first prong of the McDonnell-Douglas burden-shifting scheme. Despite the fact that it is a matter of dispute whether plaintiff "applied" for the position for which the employer was seeking a replacement, the court finds that plaintiff has satisfied her burden. Schroeder's deposition testimony concerning her 1988 conversation with her supervisor Murphy and Colin McLean, the vice president of Sager, suffices to show that her employer had knowledge of her desire to be promoted to a managerial position. In addition, Schroeder has submitted evidence that she was qualified for a promotion, such evidence including, inter alia, her lengthy tenure at Sager, during which time she had accumulated many favorable performance reviews as well as valuable accounts. Furthermore, there is competent evidence that despite her qualifications and lengthy experience as an outside salesperson, Schroeder was passed over for promotion in 1994 when Sager hired Rick Dezeil to the position of outside sales manager. See Schroeder Deposition at 92-96, 121-22. Finally, plaintiff

14

has submitted sufficient evidence at this point to support that she was as qualified as or more qualified than Dezeil for the job.  See id.

### (2) Defendant's Burden of Production

Defendant asserts that "sound business reasons" supported its decision to promote Dezeil to the management position in 1994 instead of plaintiff.  Defendant's Motion at 17.  In support thereof, defendant attaches an affidavit of its human resources manager, Gabrielle Jenkins, who states that Dezeil had more management experience than Schroeder; specifically, prior management experience at several companies prior to coming to Sager.  Affidavit of Gabrielle Jenkins ¶ 3.  Furthermore, according to Jenkins, Schroeder was not considered for promotion to the outside sales manager position because she "lacked management experience" and lacked the "leadership qualities to perform the job."  Id. ¶ 5.  Finally, Jenkins states she does not recall Schroeder ever expressing an interest in pursuing a management position at Sager, and further notes that on a self-evaluation sheet dated June 25, 1993, Schroeder wrote that she was "happy in outside sales" in response to a question asking what other duties she would like to perform.  Id.  The court's review of defendant's evidence leads to the conclusion that

15

defendant has fulfilled its relatively modest burden of articulating a legitimate, nondiscriminatory reason for its 1994 promotion decision.

### (3) Pretext for Discrimination

At this point, the pendulum swings back to plaintiff, who must now come forward with direct or circumstantial evidence indicating that her employer's proffered reasons are a pretext for gender discrimination.

To survive summary judgment, plaintiff must produce sufficient evidence to support her claim that Sager's stated reason was not only pretextual, but was also a pretext for sex discrimination. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995). As for the pretext component, plaintiff has satisfied her burden. In response to defendant's evidence that Dezeil was more qualified than plaintiff for the outside sales manager position, plaintiff submits evidence that (1) she had ten years' experience as an outside salesperson; (2) Schroeder's customers, many of whom had been served by Dezeil when he had worked at a company affiliated with Sager, often complained to her about Dezeil's performance, see Schroeder Deposition at 122-24; and (3) contrary to Sager's contentions, Schroeder had expressed interest

16

in a promotion and had even stated that she would be willing to relocate.

Although plaintiff has shown pretext, her work is not yet done, as she must also come forward at this stage with either direct or circumstantial evidence of discriminatory animus.[4] See Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994). Whichever type of evidence is relied upon, it must be sufficient, as a whole, "for a reasonable factfinder to infer that the employer's decision was motivated by [gender] animus." Id. (discussing age discrimination claim) (quotation omitted).

As for the discriminatory promotion decisions that occurred in 1994, Schroeder offers no evidence, circumstantial or otherwise, of gender-based animus. She relies in part on the 1988 promotion pass-over, which she claims was undisputedly discriminatory given her supervisor's express comments that

---

[4]As an aside, the court notes that "'[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" Smith, supra, 40 F.3d at 16 (quoting St. Mary's Honors Ctr., supra, 509 U.S. at 511. However, the First Circuit has held that such an inference largely depends on the strength of plaintiff's prima facie case. See id. Although here the plaintiff's submissions in rebuttal to defendant's stated reasons for the promotion decisions are very strong, the court finds that they do not suffice by themselves to raise an inference of actual discrimination, particularly as there is no evidence that she expressly sought a promotion after 1988.

17

Schroeder did not get the promotion because of her new stepchildren. Memorandum at 24. However, she does not show how discrimination occurring in 1988 by one supervisor is related to the promotion decisions made in 1994, apparently by different individuals within the company.

Schroeder also relies on a 1994 incident in which, after being promoted to be her supervisor in 1994, Rick Dezeil removed two of Schroeder's large accounts, leaving untouched the accounts of her male counterpart in outside sales. See Schroeder Deposition at 132-36. Even if such conduct does give rise to an inference of discriminatory animus on the part of Dezeil, it has no relevance on the issue of whether the prior decision to promote Dezeil, which was made by Sager management, was the product of discriminatory intent. As noted by the First Circuit, "'The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.'" Smith, supra, 40 F.3d at 18 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990)).

As further support that the August 1994 promotion decision was discriminatory, Schroeder points to a comment made by the owner of Sager in 1993. According to Schroeder, the owner commented that a customer who asked that Schroeder be reinstated

18

to her account was a "lesbian". Schroeder Deposition at 72-73. The court finds that this remark does not rise to the level of circumstantial evidence of discriminatory intent because (1) it is facially ambiguous, (2) it was not uttered sufficiently close in time to the employment decision in question to constitute relevant evidence, and (3) it appears to be no more than an isolated, stray comment. See Lehman, supra, 74 F.3d at 329.

Finally, plaintiff relies on an incident in which she was told by Fred Gabriel (apparently a manager at Sager) that her appearance was unacceptably messy, but male employees were not similarly criticized. The court finds that Gabriel's alleged statement does not constitute circumstantial evidence of gender discrimination. When asked to explain his comment, Gabriel cited an occasion when plaintiff appeared at work with wet hair, and plaintiff has admitted that she did in fact come to work with wet hair on that day. Although Gabriel's comment may be arbitrary, irrational, or unfair, it does not suffice to show discriminatory animus on the part of Sager.

Accordingly, as plaintiff has failed to produce evidence, direct or indirect, to support that Sager's stated reason for hiring Dezeil as outside sales manager in 1994 was a pretext for gender discrimination, the court must grant defendant's motion for summary judgment on plaintiff's Title VII claim, to the

19

extent it is based on this event.

### d. Constructive Discharge Claim under Title VII

In its reply memorandum, defendant states that it has not addressed plaintiff's claim that she was constructively discharged in violation of Title VII because such claim was not properly pleaded in the complaint. Rule 8(a), Fed. R. Civ. P., sets forth that notice pleading requires only a "short and plain statement of the claim showing the pleader is entitled to relief." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993). However, where, as here, plaintiff has alleged a civil rights violation, the rules have been interpreted to require a heightened level of particularity in the pleadings. Cf. id. at 866.

Plaintiff's complaint is limited to one count for sex discrimination. Under such count, she incorporates all of her previous allegations. One of such allegations states, "By discriminating against Ms. Schroeder on the basis of sex, Sager subjected Ms. Schroeder to intolerable working conditions thereby forcing her to leave her employment." Complaint ¶ 25. Furthermore, under the count for sex discrimination, plaintiff asserts,

> 30. Sager used Ms. Schroeder's sex as a determining factor in denying her promotions and

20

> violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e.
>
> 31. Sager violated Title VII of the 1964 Civil Rights Act with malice and/or with reckless indifference to Ms. Schroeder's federally protected rights.
>
> 32. Ms. Schroeder has been damaged by the discriminatory acts of Sager.

Id. at 4-5.

After careful review of the complaint, the court concludes that defendant was given sufficient notice that plaintiff's Title VII claim encompassed both the allegedly discriminatory promotion pass-overs and the constructive discharge. In addition to the close proximity of the allegations of being forced to leave her employment (¶ 25) and the count for sex discrimination (¶¶ 29-32), the court has considered that the complaint itself is very short (five pages), that it contains only one count, and that even the most cursory of readings leads to the conclusion that plaintiff asserts she has been harmed by a discriminatory constructive discharge. Defendant further states that "consideration of the constructive discharge issue is not relevant to the pending motion." See Defendant's Reply at 7. Accordingly, the court does not decide whether defendant is entitled to summary judgment on the Title VII claim insofar as it is based on constructive discharge other than to find that it has been properly pled in the complaint.

21

### e. Evidentiary Concerns

Defendant lastly requests that evidence pertaining to the 1988 promotion pass-over, as well as the alleged 1990 promotion pass-over, be excluded from the evidence. Plaintiff responds that such evidence pertains to whether she was constructively discharged in 1994. As defendant has stated that its motion does not relate to plaintiff's constructive discharge claim, it would be premature for the court to examine whether evidence of the allegedly discriminatory denial of promotion in 1988 would be admissible. Accordingly, the court denies defendant's request to exclude such material from evidence, but does so without prejudice.

### 2. Plaintiff's Motion to Compel/Defendant's Motion for Protective Order

Plaintiff and defendant have filed, respectively, a motion to compel and a motion for protective order, both of which concern plaintiff's second set of interrogatories, propounded to defendant on July 26, 1996.

Defendant argues, inter alia, that it is entitled to a protective order because plaintiff has exceeded the allotted number of interrogatories permitted by Rule 33(a), Fed. R. Civ. P., which limits a party to serving no more than 25

22

interrogatories without leave of court.  See also Local Rule 26.1(e)(2).  However, the Rule 33(a) permits the court to grant leave to serve additional interrogatories to the extent consistent with Rule 26(b)(2), which lists three limiting situations when additional time should not be allowed: (a) the discovery sought is unreasonably cumulative; (b) the party seeking discovery has had "ample" time to obtain the information sought through discovery; and (c) the burden and expense of the proposed discovery outweighs its likely benefit.

Having reviewed the interrogatories in question, and the various objections interposed by the defendant to the first set of interrogatories, the court finds that none of the three limiting circumstances would apply to prevent plaintiff from serving on defendant the second set of interrogatories.  First, the second set is not unreasonably cumulative, particularly given the ample number of objections raised by defendant to the first set.  Second, although plaintiff has had time to obtain the information, the amount of time is not so "ample" as to prevent her from filing a second set of interrogatories.  Finally, there has been no showing that answering the interrogatories would be unduly burdensome or expensive.

Plaintiff's motion to compel is filed pursuant to Rule

23

37(a)(2)(B).[5] Plaintiff describes the interrogatories as primarily seeking information about the income and benefits received by Schroeder and the Sager employees who were promoted ahead of her. At another point, plaintiff states that such information is relevant to her discriminatory refusal-to-promote claim. Although the court has entered judgment on plaintiff's discriminatory promotion claim, the court finds that the interrogatories are relevant to plaintiff's Equal Pay Act (EPA) claim, see infra at 28, insofar as they seek information about the relative pay of plaintiff's male co-workers. Thus, the court grants plaintiff's motion to compel and denies defendant's motion for protective order.

3. Defendant's Motion to Exclude Expert Testimony

Defendant has moved to exclude the testimony of plaintiff's experts because their disclosures fail to comply with the Federal Rules of Civil Procedure. Under the court's pretrial order of June 6, 1995, the deadline for plaintiff's expert disclosure was July 1, 1996, and the completion of all discovery was set for October 1, 1996. At the request of plaintiff's counsel, the parties agreed to the following new deadlines: (1) plaintiff's

---

[5]Plaintiff also objects to defendant's motion for protective order.

24

disclosure of experts' reports, August 5, 1996; (2) defendant's experts' written reports, October 18, 1996; and (3) completion of all discovery, November 29, 1996.  On August 5, 1996, plaintiff provided its expert disclosures to defendant, which defendant now asserts are deficient.

Defendant specifically invokes Rule 26(a)(2)(B), Fed. R. Civ. P., which requires that a party disclose its experts before trial and provide a written report, prepared and signed by the expert witness, which shall contain a complete statement of the expert's opinions, including the basis and reasons supporting them.

Plaintiff argues that three of her experts are treating physicians and are thus exempt from the formalities detailed in the rule, particularly the requirement that she file a written report.  Plaintiff is correct that under certain circumstances a party need not disclose a treating physician as an expert.  Cf. Zarecki v. National R.R. Passenger Corp., 914 F. Supp. 1566, 1573 (N.D. Ill. 1996).  When a treating physician is called to testify as to information acquired through the care and treatment of the patient--as opposed to in anticipation of trial--the written report requirement of Rule 26(a)(2)(B) does not obtain.  Cf. id.; Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y. 1995).  However, the rule does require a written report "when the

25

doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony." Id.

From what plaintiff has disclosed about her experts' testimony, it is unclear whether they will be testifying about information beyond that which they acquired through the care and treatment of the plaintiff. It appears from what plaintiff has disclosed that all three experts, Maureen Malone, a certified clinical social worker; Dr. Daniela Verani, who is otherwise unidentified; and John D. Westhaver, Jr., a pastor and counselor, will base their testimony at least in part on either their examination or their counseling of plaintiff. To the extent their testimony is limited to information received in connection with the care and treatment of plaintiff, they need not file written reports.

However, plaintiff appears to have left the door open to permit her experts to testify beyond such facts. For example, both Dr. Verani's and Ms. Malone's opinions are based upon not only their treatment of plaintiff but also their "review of relevant documents and other information regarding this matter, and will be further based upon [their] education, training and experience." See Expert Disclosures of Maureen Malone and Dr. Daniela Verani (attached as Exhibits B and C, respectively, to

26

plaintiff's objection). If plaintiff intends to use these experts for their opinions that go beyond information they acquired through the treatment and care of the plaintiff, she must comply with the requirements of Rule 26(a)(2)(B). Accordingly, if this is the case, plaintiff has until Friday, November 22, 1996, at 4:30 p.m. to supplement her disclosure to comply with the rule.

Defendants also have moved to exclude the testimony of Catharine S. Newick, plaintiff's economic expert. Plaintiff contends she has not been able to produce a written report because Newick requires information in the sole custody of defendant. Plaintiff further asserts that defendant has refused to share this information, despite being served interrogatories. Given the court's rulings herein, the court agrees with plaintiff and grants plaintiff an extension of time to disclose Newick's testimony in compliance with Rule 26(a)(2)(B). See discovery schedule set forth in conclusion.

## 4. Plaintiff's Motion to Amend

Rule 15(a), Fed. R. Civ. P., provides that where, as here, a party seeks to amend a pleading more than 20 days after said pleading has been served, a party may amend only by leave of court or by written consent of the adverse party. Rule 15(a)

27

further provides that "leave [to amend] shall be freely given when justice so requires."  Thus, before denying a motion to amend, the court must be able to find a valid reason to support the denial, such as undue delay, bad faith, dilatory motive on the part of movant, or futility of the amendment.  See Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiff seeks to amend the complaint to add two new claims--one under the Equal Pay Act, 29 U.S.C. § 206(d), and one for wrongful discharge in violation of New Hampshire law.

Defendant first argues that given the considerable time which has elapsed between the filing of the original complaint and the motion to amend, plaintiff has the burden of providing a valid reason for the delay.  See id. (citing Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983)).  The court agrees with defendant that although plaintiff has filed its motion to amend approximately two months prior to the close of discovery, it is obliged to provide a valid reason for this delay given that more than 17 months had elapsed since it filed the original complaint.

Plaintiff asserts that the delay for adding the EPA claim was caused in part by Sager's refusal to respond to plaintiff's interrogatory requests seeking relevant evidence in the exclusive

28

control of defendant. Plaintiff propounded its first set of interrogatories on October 24, 1995, to defendant, requesting, inter alia, that defendant disclose the compensation of several employees both before and after they were promoted to positions denied to Schroeder. Defendant objected and did not provide much of what plaintiff sought. The court finds that plaintiff has provided an adequate reason for her delay. The court further finds that defendant will not be prejudiced by the amendment. As will be shown by the new discovery schedule at the end of this order, defendant will have ample time for additional discovery. In addition, the EPA claim arises from the same general facts and circumstances giving rise to plaintiff's other claims.

Plaintiff's motion to amend must be denied, however, insofar as she seeks to add a claim for wrongful discharge. As grounds for said claim, plaintiff asserts that she was constructively discharged on the basis of her gender. A claim for wrongful discharge is not recognized when the legislature intended to replace it with a statutory cause of action. Cf. Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996) (citing Wenners v. Great State Beverages, Inc., 140 N.H. 100 (1995)). As noted in Smith, "Title VII not only codifies the public policy against gender-based discrimination . . . but also creates a private right of action to remedy violations of that policy and limns a

29

mature procedure for pursuing such an action." Id. Accordingly, given that Title VII provides the appropriate vehicle to pursue a claim for gender discrimination, plaintiff's request to amend the complaint to add a claim for wrongful discharge would be futile and is thus denied.

## Conclusion

For the foregoing reasons, the court rules as follows:

1. Defendant's motion for partial summary judgment (document 10) is granted to the extent it seeks dismissal of plaintiff's claim that she was passed over for promotion in violation of Title VII;

2. Defendant's motion for protective order (document 16) is denied;

3. Defendant's motion to exclude expert testimony (document 17) is denied;

4. Plaintiff's motion to compel defendant's answers to interrogatories (document 19) is granted; and

5. Plaintiff's motion to amend (document 26) is granted in part (as to the EPA count) and denied in part (as to the wrongful discharge count).

Furthermore, the pretrial schedule is amended as follows:

A. Plaintiff has until Friday, November 22, 1996, at 4:30

30

p.m. to supplement, if necessary, the disclosures of the testimony of her medical experts;

B.   Defendant is ordered to respond to all interrogatories presently served by Friday, November 22, 1996;

C.   Plaintiff has until December 23, 1996, to submit the written reports of any other of her experts;

D.   Defendant has until January 22, 1997, to submit the written reports of its experts; and

E.   All discovery shall close on February 21, 1997, and trial shall be set thereafter by the clerk of the court.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 28, 1996

cc: All Counsel

31